186 So. 741

**WM. M. BARRET, Inc., v. FIRST NAT. BANK OF SHREVEPORT.**

No. 35072.

Jan. 10, 1939.

Rehearing Denied Feb. 6, 1939.

Blanchard, Goldstein, Walker & O'Quin, of Shreveport, for appellants.

Bryan E. Bush and Elmo P. Lee, both of Shreveport, for appellee.

Schwarz, Guste, Barnett & Redmann, of New Orleans, for National Bank of Commerce in New Orleans.

Rosen, Kammer, Wolff & Farrar, of New Orleans, for Hibernia Nat. Bank in New Orleans.

Monroe & Lemann and Malcolm L. Monroe, all of New Orleans, for Whitney Nat. Bank of New Orleans.

Breazeale & Sachse and George M. Wallace, all of Baton Rouge, Hudson, Potts, Bernstein & Snellings, of Monroe, and Le Doux R. Provosty, of Alexandria, amicus curiae.

ROGERS, Justice.

Wm. M. Barret, Inc., brought this suit against the First National Bank of Shreveport to recover the sum of $21,841.01 of which $19,347.01 represents the aggregate amount of forged checks paid by the defendant and charged to the account of plaintiff, and $2,500 represents attorney's fees demanded as damages. In the alternative, plaintiff claimed that in the event the court should hold it was not entitled to a recovery by reason of the forgery of its name on the checks that it should recover on such of the checks as bore forged endorsements. Defendant, in its answer, denied the forgeries and pleaded that plaintiff, by its negligent delegation of authority to the alleged forger without proper supervision of his account, was estopped to assert any loss from payments made after the return to plaintiff of the first monthly statements of account and cancelled checks, which should have disclosed the forgeries upon proper examination. For further answer, defendant pleaded the provisions of Act No. 163 of 1934 as a bar to plaintiff's action for the reason that no notice was given by plaintiff to defendant upon the monthly returns of the statements of account and cancelled checks. Defendant also set up an alternative plea of prescription of one year as provided in Act No. 163 of 1934. Plaintiff pleaded that Act No. 163 of 1934 is unconstitutional for the reason, first, that the act is broader than its title and, secondly, that it is discriminatory. Upon the issues as thus made up, the case went to trial.

Plaintiff is a corporation and all its stock is owned by Wm. M. Barret, its President, except qualifying shares issued to his brother, an attorney, and to an employee. The corporation is engaged in what is known as geophysical work in the oil and mining industry. This work is done in the field by crews in charge of a party chief. The data obtained from the exploration in the field is assembled, analyzed and incorporated under geological

terms and when completed, the reports are furnished to plaintiff's clients. The expense of operation is largely made up of personal services, automobile and traveling expenses and in equipment, advertising, maps and reports. G. L. Rousse, the alleged forger, was employed by plaintiff in November, 1934, and was engaged in odd jobs in plaintiff's office until January, 1935, when he was placed by plaintiff in charge of its books. Rousse acted as plaintiff's bookkeeper until August 28, 1937, when he was discharged. As bookkeeper, Rousse had charge of plaintiff's general ledger, check book, and combination cash book and journal. Beginning in the first month of his employment as bookkeeper, Rousse commenced a series of forgeries of the plaintiff's checks drawn upon the defendant. These forgeries continued until about the end of August, 1937, when they were discovered. Under the system employed in the execution of his forgeries, Rousse would forge the name of plaintiff to its checks, making the checks payable to the order of himself and other employees of plaintiff, including Mr. Barret, and then would forge the endorsements of the payees of a large number of the checks, cashing them or depositing them to his own credit with the defendant bank. Rousse transferred, by means of forged checks, upwards of $14,000 from one of plaintiff's accounts with the bank to another of its accounts, and in addition to this, paid upwards of $2,000 of accounts due by plaintiff by means of forged checks. No claim is made on these items as plaintiff suffered no loss thereon. When plaintiff discover-

ed the forgeries, Rousse was on vacation in Florida, and plaintiff brought suit attaching all his property. This suit was compromised, and as a result thereof, plaintiff recovered approximately $5,800, which amount was applied to the oldest forgeries constituting all the checks which were paid by defendant between January 15, 1935, and November 15, 1935, leaving unpaid 175 of the 335 checks which had been forged by Rousse. Plaintiff's demand is predicated on the payment by the defendant of these 175 checks for a period extending from November 16, 1935, to August 27, 1937.

All the checks of the plaintiff, genuine as well as forged, were prepared by Rousse who had full charge of plaintiff's check book. Each check was drawn on a printed form in which the amount was filled in by the plaintiff's check-writing machine, the only handwriting thereon being the signature, or what purported to be the signature, of Mr. Barret, President-Treasurer of the plaintiff. All checks bore printed numbers running serially. Rousse drew the forged checks, as well as the genuine checks in their numerical order, with the result, considering the almost perfect imitation of the signatures, that the forged checks appeared to be identical with the genuine checks numbered in their proper order. There was no examination of the monthly statements and cancelled checks returned to plaintiff by defendant except by Rousse himelf, and there was no supervision of Rousse's accounts except such as resulted from a balance sheet audit of the plaintiff's books every six months.

This audit consisted merely of the checking of the bookkeeping entries made by Rousse. There was no examination made to ascertain the correctness of any voucher upon which the checks were issued and which, in fact, did not exist.

The forgeries were so cleverly executed that Mr. Barret himself could not at first tell the forged checks from the genuine checks, plaintiff's loss being first established by a detailed audit which was resorted to after discovery of the existence of checks for large amounts payable to Rousse.

The trial judge held the provisions of Act 163 of 1934, requiring notice of forgeries by a bank depositor upon return of vouchers representing payments made as a condition necessary to the maintenance of an action against the bank for the payment of forged checks, to be unconstitutional on the ground that the object of those provisions was not sufficiently indicated by the title of the statute, but he maintained the plea of prescription under the statute as to all checks returned more than one year prior to November 5, 1937, the date of the institution of the suit, and further maintained defendant's plea of estoppel as to all checks dated after July 1, 1937. The amount of the judgment rendered was $5,753.57, or the aggregate sum of all checks cashed by the defendant between November 5, 1936, and July 1, 1937. From this judgment defendant has appealed. Plaintiff has answered the appeal, praying that the judgment of the court below be amended so as to increase the amount of the judgment in its favor from $5,753.57 to $19,347.01, and in the alternative, should the Court hold that the prescription of one year, pleaded by the defendant under Act 163 of 1934, constitutes a bar to the recovery by plaintiff of all checks paid by defendant and charged to plaintiff's account prior to one year before the filing of the suit, that the judgment of the lower court be amended by increasing the amount of the judgment in its favor from $5,753.57 to $13,441.69.

Before passing upon the question of negligence as between plaintiff and defendant, it is necessary to dispose of the question that arises under defendant's plea in bar predicated upon the provisions of Act No. 163 of 1934, since obviously if the plea is well founded, plaintiff's action can not be maintained.

Plaintiff challenges the constitutionality of the act on the ground that the body of the act is broader than its title and embraces two objects, and on the further ground that the act discriminates between depositors who receive returned vouchers and depositors who are notified that vouchers are ready for delivery. The trial judge sustained the first and rejected the second ground of attack upon the constitutionality of the act.

For convenience, we quote in full Act No. 163 of 1934 with its title, italicizing the provisions of the statute which the trial judge found to be unconstitutional, viz.:

## "An Act

"Prescribing the time within which suits may be instituted against banks by depositors to enforce liability for payment of

forged or raised checks and checks payable to fictitious persons.

"Section 1. Be it enacted by the Legislature of Louisiana, That suits to enforce the liability of any bank which has paid and·charged to the account of a depositor any money on a forged or raised check, or on a check made payable to a fictitious person and issued in the name of said depositor, shall only be brought, either within one year after notice to said depositor that the vouchers representing payments charged to his deposit account for the period during which such payment was made are ready for delivery, or, in case no such notice has been given, within one year after the return to said depositor of the voucher representing such payment, *and then, and solely in that event, only if said depositor, upon such return by the bank, shall have notified it that the check so paid is forged or raised, or was payable to a fictitious person.*

"Section 2. That either notice referred to in the preceding section may be given by mail, postage prepaid, directed to the addressee's last known address.

"Section 3. That Act 44 of 1912 and all other laws, or parts of laws, as may be in conflict herewith be, and the same are, hereby repealed."

Plaintiff argues that, according to its title, the act deals only with the period of prescription; that, under its title, the sole object of the act is to prescribe the time in which suits may be brought to enforce liability for payment of forged or raised checks, or checks payable to fictitious per-

sons. · Plaintiff concedes that the provisions of the statute providing that suit must be brought within one year after notice by the bank to the depositor that the vouchers are ready for delivery, or in case no such notice has been given, within, one year after the return of the vouchers, create strictly prescriptive periods and are wholly in keeping with the title of the statute. But plaintiff contends that the part of the statute, which reads "and then, and solely in that event, only if said depositor, upon such return by the bank, shall have notified it that the check so paid is forged or raised, or was payable to a fictitious person," section 1, has nothing to do with a period of prescription, but is a condition precedent to the bringing of a suit. In other words, the statutory provision has no relation to the prescriptive period within which a suit must be brought, but prescribes a condition which must be complied with by the depositor in order to maintain a right of action. Plaintiff asserts that there is nothing in the title indicative of this provision in the act, and that the provision itself is wholly foreign to the subject-matter of the title; that the act embraces two objects in that it attempts to create a prescriptive period within which suits may be brought, and independently thereof seeks to establish the condition only upon which a suit may be brought; that these things being true, the act is either unconstitutional as a whole or it is unconstitutional to the extent of the proviso which is foreign to the title.

It is to be observed that the statute is not strictly a statute of prescription.

It is more in the nature of a statute of peremption. It does not declare that all causes of actions upon forged checks shall be prescribed after one year, but it declares that all such actions shall be brought within one year. Under the statute, the depositor has a right of action for one year to enforce liability of a bank on a forged check. After the lapse of that period, his right of action is gone.

The legislature, in adopting Act No. 163 of 1934, did not fix a time limit for the institution of suits enforcing liability for the payment of all forged or raised checks, or checks payable to fictitious persons. The statute applies only to such checks as are honored by banks. The statute was enacted for the protection of the depositors and stockholders in banks. It creates a defense to a liability which, if not restricted, would seriously affect the stability of every bank.

The forgery of the maker's name to a check can be discovered more readily by him than by any one else and the relation between a bank and his depositor requires an examination of returned checks to discover forgeries or alterations.

The statute is a salutary one, adopted to serve a public purpose, and should be upheld unless it is clearly unconstitutional.

In the case of State v. Hincy, 130 La. 620, 58 So. 411, it was held that it is not necessary for the title of an act to be a complete index to every section of the act, and that it is sufficient if the title, in general terms, directs attention to the purposes of the law. This rule of construction was applied and followed in White Oil Corp. v. Flanagan, 153 La. 837, 96 So. 675; State v. Thrift Oil & Gas Co., 162 La. 165, 110 So. 188, 51 A.L.R. 261; State v. Monteleone, 171 La. 437, 131 So. 291; State v. Terrell, 181 La. 974, 160 So. 781; State v. Morton, 182 La. 887, 162 So. 718; and Arkansas-Louisiana Gas Co. v. Parker Oil Co., 190 La. 957, 183 So. 229.

The purpose of Act No. 163 of 1934, as indicated by its title, is to limit the time within which a depositor may sue the bank to enforce liability on a forged check which the bank has paid. The provision of the act requiring that notice of the forgery be given to the bank upon return of the cancelled checks of the depositor relates directly to the purposes of the act. The statute, by its terms, places a duty on the bank either to return cancelled checks to the depositor or to notify the depositor that they are ready for delivery. It is only by complying with these requirements that the bank may avail itself of the benefits of the statute. The depositor, on the other hand, is charged with the duty of notifying the bank of the existence of a forged check upon its return to him. For the statutory provisions to be applicable, each party must fulfill certain conditions prescribed therein. The provisions of the act, requiring that upon return of a forged check to the depositor notice of the forgery must be given to the bank, relate directly to the manner in which the depositor himself may preserve the right to sue within a period of one year for the amount of a forged check

paid by the bank. We think the provision is germane to the purposes expressed in the title of the act, which is sufficient to place all persons in interest upon reasonable notice to make inquiry into the provisions of the act itself.

 The next ground urged by plaintiff against the constitutionality of Act No. 163 of 1934 is that the act discriminates in the length of time between the depositors who receive returned vouchers and the depositors who are notified by the bank that their vouchers are ready for delivery. We do not find any such discrimination in the provisions of the statute. Had a time limit of one year only from the delivery of the cancelled checks been fixed in the act, this would have destroyed the purpose of the act which was to protect the banks of this state. This is so because there would be no duty imposed upon a depositor who failed to call for his cancelled checks when notified to do so. Such a depositor could wait for years before receiving his cancelled checks and then only would the time limit of one year begin to run. Under the statute as written, the bank must assemble the cancelled checks and when assembled either deliver them to the depositor or notify the depositor that they are ready for delivery. Upon the performance of either of these acts by the bank, the time limit for filing suit against it commences. If one depositor is notified that his cancelled checks are ready for delivery and another depositor actually receives his cancelled checks on the same day, the time limit for bringing suit against the bank begins to run against both depositors simultaneously and has the same length of time to run. It is true that a depositor who is notified that his cancelled checks are ready for delivery and fails to promptly call for them, will have a shorter period thereafter within which to bring suit against the bank than the depositor to whom cancelled checks are delivered. But if such a depositor might have the right to urge discrimination as to time, it is clear that the plaintiff who has the longest period under the act within which to bring suit, has no right to urge such a complaint. The statute does not appear to operate prejudicially to persons within the same class, which is all that is necessary to meet plaintiff's complaint.

Plaintiff's attack on the constitutionality of Act No. 163 of 1934 is not well founded.

 This brings us to the consideration of plaintiff's alternative demand to enforce liability on the defendant for the payment of those checks upon which the endorsements were forged. Eighty-eight of the checks sued on are payable to named payees. These checks, aggregating $14,-853.14, were deposited by Rousse to his own credit in the defendant bank. It is plaintiff's contention that the provisions of Act No. 163 of 1934 have no application to the right of a depositor to sue a bank for its payment of checks upon which the names of the payees have been forged. In support of its contention plaintiff cites Michie on Banks and Banking, vol. 5, sec. 283; Zollman on Banks and Banking, vol. 6, 1936 Ed., sec. 4163; United Motor Car Co. v. Mortgage & Securities Co., 13 La. App. 385, 128 So. 307, 308; and a number

of decisions from the courts of other states. The principles of law announced by the text-writers and the decisions of the courts relied on by plaintiff are sound, but they are not appropriate to this case. The cited authorities relate to valid checks on which the endorsements are forged. The reason for the rule is plain. Where a depositor draws a check to the order of his creditor and the creditor's endorsement is forged and the bank pays the check on the forged endorsement, the depositor is not charged with knowledge of the endorser's signature and is not in a position, upon the return of the check, to discover the forgery. As a matter of fact, the maker of the check may not discover the forged endorsement until the time limit fixed in the statute for the institution of the suit has elapsed, and having lost his right of action against the bank, would still be required to pay his creditor the amount due, but where a check bears the forged signature of the depositor and is made payable to a person who is not a creditor of the depositor, no loss is suffered by the depositor by reason of the forged endorsement. It is immaterial therefore so far as the depositor and the bank are concerned whether the actual payee or some other person receives the money on the check, the resulting loss is due to the forgery of the drawer's signature and not to the forgery of the payee's signature.

In this case plaintiff has not suffered any loss by reason of the forged endorsements on the checks. Plaintiff will not be required to pay anything to the named payees as they are not creditors of plaintiff. The loss suffered by plaintiff is due to the payment of the checks by the defendant on the forged signatures of plaintiff as drawer of the checks and charging the amount of the checks to plaintiff's account. Since the checks, when issued, were forged instruments, the fact that they were payable to persons who were not creditors of the plaintiff and whose endorsements were also forged, does not take the checks out of the class of forged instruments covered by Act No. 163 of 1934 and place them in the class of valid checks bearing forged endorsements to which the provisions of the statute have no application.

If an instrument is a forgery in its inception, it can not become valid at any subsequent date unless it is ratified by the purported maker. Such is not the case here.

For the reasons assigned, the judgment herein appealed from is annulled, and it is now ordered that there be judgment in favor of the defendant, The First National Bank of Shreveport, rejecting the demands of the plaintiff, Wm. M. Barret, Inc.; plaintiff to pay all costs.

O'NIELL, Chief Justice (concurring).

So far as Act No. 163 of 1934 forbids the bringing of a suit by a depositor to enforce the liability of a bank for having paid a forged or raised check, or a check payable to a fictitious person, unless the depositor has notified the bank, upon return of the voucher representing the payment, that the check was forged or raised, or was payable to a fictitious person, as

the case may have been, the object of this statute is not expressed in its title. To that extent the statute might not stand the test of article 31 of the Constitution of 1898 or of 1913,—which required the object of the law to be expressed in its title. But, in the Constitution of 1921, article 3, section 16, this. requirement is relaxed so that it is required now only that the title of a statute shall be indicative of its object. It is argued, of course, that the title of Act No. 163 of 1934 is not even indicative of the object which I have referred to. Under a strict construction of the requirement of the Constitution the argument would be well founded. But the rule which prevails everywhere is that a liberal interpretation is to be given to such a provision as we have in section 16 of article 3 of the Constitution of Louisiana. In fact the better opinion on this subject seems to be that the word "object" is synonymous with "subject", and that it is sufficient if the subject dealt with in the statute is indicated in its title,—provided, of course, that there is nothing misleading in the title of the statute. The purpose of the constitutional requirement is to avoid deceiving the members of the Legislature, or other persons who are especially interested in the legislation. It is not likely that any person having a sufficient interest in the subject of this legislation to read the title of the act would not be prompted thereby to .read the act itself, or would be so negligent as to read only the title of the act. There have been cases, of course, where the title of a statute was so defective that it might deceive a person interested in the subject matter; and in such cases the statutes have been pronounced unconstitutional. This is not such a case. Although much may be said on the other side of the proposition, I subscribe to the decree in this case.