Bank of Shreveport, rejecting the demands of the plaintiff, Wm. M. Barret, Inc.; plaintiff to pay all costs.

O'NIELL, Chief Justice (concurring).

So far as Act No. 163 of 1934 forbids the bringing of a suit by a depositor to enforce the liability of a bank for having paid a forged or raised check, or a check payable to a fictitious person, unless the depositor has notified the bank, upon return of the voucher representing the payment, that the check was forged or raised, or was payable to a fictitious person, as the case may have been, the object of this statute is not expressed in its title. To that extent the statute might not stand the test of article 31 of the Constitution of 1898 or of 1913,—which required the object of the law to be expressed in its title. But, in the Constitution of 1921, article 3, section 16, this requirement is relaxed so that it is required now only that the title of a statute shall be indicative of its object. It is argued, of course, that the title of Act No. 163 of 1934 is not even indicative of the object which I have referred to. Under a strict construction of the requirement of the Constitution the argument would be well founded. But the rule which prevails everywhere is that a liberal interpretation is to be given to such a provision as we have in section 16 of article 3 of the Constitution of Louisiana. In fact the better opinion on this subject seems to be that the word "object" is synonymous with "subject", and that it is sufficient if the subject dealt with in the statute is indicated in its title,—provided, of course, that there is nothing misleading in the title of the statute. The purpose of the constitutional requirement is to avoid deceiving the members of the Legislature, or other persons who are especially interested in the legislation. It is not likely that any person having a sufficient interest in the subject of this legislation to read the title of the act would not be prompted thereby to read the act itself, or would be so negligent as to read only the title of the act. There have been cases, of course, where the title of a statute was so defective that it might deceive a person interested in the subject matter; and in such cases the statutes have been pronounced unconstitutional. This is not such a case. Although much may be said on the other side of the proposition, I subscribe to the decree in this case

JACKSON v. HART et al.*

No. 16995.

Court of Appeal of Louisiana. Orleans.

Feb. 6, 1939.

Lewis R. Graham and Daniel Wendling, both of New Orleans, for movers-appellees.

Miller, Bloch & Martin, of New Orleans, for defendant in rule-appellant.

JANVIER, Judge.

The questions presented in these consolidated rules is whether Act No. 156 of 1912, which is now amended by Act No. 260 of 1918 and by Act No. 421 of 1938, is violative of Section 16, Article 3 of the Constitution of 1921, which provides that

*Rehearing denied Feb. 27, 1939; writ of certiorari granted by Supreme Court April 3, 1939.

"every law enacted by the Legislature shall embrace but one object, and shall have a title indicative of such object".

The principal suit was brought by Rhoda Jackson in forma pauperis. The defendants were Joseph Hart, in whose premises the plaintiff alleged that she had sustained injuries, and London & Lancashire Indemnity Company of America, which was alleged to be the liability insurance carrier of the said Hart. Before the suit was tried, a compromise was effected and the amount agreed upon, $75, was paid to the plaintiff. Since the suit had been filed under the so-called "pauper act", the usual fees of the Clerk of the First City Court and of the Constable of that court had not been paid as they became due, nor were they paid when the compromise settlement was effected. Therefore, Anthony Herrle, Clerk, and James Dempsey, Constable of said court, filed these rules praying that the plaintiff and the two defendants in the principal suit be condemned solidarily to pay the said costs because of the provision in Section 3 of Act No. 156 of 1912 that "should any compromise be entered into contrary to this provision each party thereto shall be liable to said officers for the amount of said costs accrued at the time of said compromise". Herrle, the Clerk, claimed the sum of $16.30, and Dempsey, the Constable, claimed the sum of $5.

We note, in passing, that this section was not affected by Act No. 260 of 1918, nor by Act No. 421 of 1938, which amendatory acts affect only Section 1 of the Act of 1912.

Rhoda Jackson filed no appearance in answer to the rules, but the London & Lancashire Indemnity Company of America filed returns in which, by exception of no cause or right of action, it challenged the constitutionality of the provision of the statute to which we have referred and, in the same returns, as required by the rules of the First City Court, it filed answer in which it averred that the compromise settlement for the sum of $75 had been made and that it had paid the said amount and had received from the said Rhoda Jackson a written agreement to the effect that she would undertake the discontinuance of the suit.

We find in the record no return to either of the said rules filed by Joseph Hart.

The exception is grounded on the contention that that part of Section 3 of Act No. 156 of 1912, which places upon parties-litigant who compromise with pauper litigants liability for the costs which have accrued, is unconstitutional in that the title of the said statute contains nothing which indicates that the statute makes any such parties liable,—in other words that, although one of the objects of the act is to make such other parties liable, nothing concerning such liability is even hinted at in the title. The full title of the act reads as follows: "An Act to authorize litigants who are unable to pay costs to litigate as plaintiff, defendant, or intervenor, in the courts of this State without the previous or current payment of costs and without giving a bond for costs, and fixing the extent, terms, conditions and manner of exercising the right herein granted."

The provision of the act which is under attack has already been set forth herein.

It will at once be noted that the title indicates that the sole object of the statute is to give certain rights to pauper litigants and to fix conditions under which those rights may be exercised. There is no word or syllable or hint that any obligation is placed upon the opposing party; there is no suggestion that the act contains any limitation upon the right of any such opposing party to compromise, which right to compromise unrestrictedly is well recognized in the Civil Code in Art. 3071 et seq. If the "pauper act" did not contain the provision concerning the opposing party, the question of the liability for costs would be settled by Art. 491 of the Code of Practice, which provides that "The plaintiff may, in every stage of the suit previous to judgment being rendered, discontinue the suit on paying the costs." Therefore, if the defendants here were not properly put on notice by the title of the "pauper act" that they could not compromise without becoming liable for the payment of costs, they would have been justified in assuming that the plaintiff, in order to discontinue the suit, should be required to pay the costs.

Of course, it often has been said that the constitutional requirement does not mean that the object of a statute must be set forth in detail in the title and that the title need be an index of the provisions of the body of the statute; and it must be recognized that the provision, as it appears in Section 16 of Article 3 of the Constitution of 1921, contains a change in the wording which now requires only

that the title need "indicate" the object of the statute, whereas in all of the previous constitutions it was required that the title must "express" the object. Nevertheless, even the Constitution of 1921 shows the purpose of the framers thereof that the title of every statute must be broad enough at least to include, by inference or reference, everything sought to be accomplished by the body of the act; in other words, that any person reading the title should be put on notice of the possibility that his rights may be affected by the statute itself.

There are numerous cases involving these provisions of the various constitutions of this state and we see no necessity that we quote at great length from any of them because each was decided under the particular facts involved. Each case presents a different situation and the body of each statute must be compared with the title in order to determine whether that title is indicative of the provisions of the statute.

But there are a few cases to which we deem it advisable to refer. Counsel for movers point with confidence to the case of Grinage v. Times-Democrat Publishing Company, 107 La. 121, 31 So. 682, 683. There the statute under attack was Act No. 136 of 1880, the title of which showed the object to be the fixing of fees of the clerks of the Civil and Criminal District Courts and other officials and to regulate the collection of said fees. In the body of the act was a provision that the defendant might require the plaintiff to furnish a bond for the payment of costs. It was contended that, since the title referred only to the requirement that the fees be paid to the clerks or other officials, there was nothing therein to indicate that the other party might require the furnishing of a bond for costs. But the Supreme Court said:

"*Regulating* the collection of costs is a term broad and comprehensive enough to cover the requirement of security for costs, and as defendant may incur obligation for costs and pay out money for costs in the preparation of its defense, it is not without the pale of the title of the act when the body thereof authorizes the exaction from plaintiffs of a bond for the costs it may expend.

"The bond, even though exacted at the instance of defendant, enures, at last, to the benefit of the clerk and sheriff, and is, therefore, pertinent and germane to the subject with which the act deals, to-wit:— the costs of those officials. See Hope et al. v. City of New Orleans [106 La. 345] 30 So. 842." (Supreme Court's italics)

We do not think that the same may be said about the title under attack here. There is nothing whatever in the title— which refers only to the *rights* of pauper litigants—to indicate that the *obligations* of opposing litigants are in any way affected.

In Southern Hide Company v. Best et al., 176 La. 347, 145 So. 682, the contention was that the title, which set forth as an object of the act the amending of a former statute, was not sufficiently broad to permit of provisions in the amendment not contained within the original act. But the Supreme Court held that the title of the original act was sufficiently broad to have permitted of the inclusion of the provisions contained within the amending statute and that, therefore, the title of the amending act was sufficiently broad.

In Wm. M. Barrett, Inc. v. First National Bank of Shreveport, 186 So. 741, decided by the Supreme Court on January 10, 1939, the statute under attack—Act No. 163 of 1934—provided that a depositor who might seek to bring suit against the bank for the payment of forged or raised checks, or checks made to a fictitious person, must do so within one year from the time at which the said checks were returned to the depositor, or from the time at which he was notified of the payment of the checks, and that the suit could not be brought unless, upon receipt of said checks or of notice that the checks had been paid, he gave notice to the depositary that the checks had been improperly paid. The title made no reference to the giving of such notice. The court held that the act was passed for the general purpose of requiring depositors to bring such suits within the specified period and that any person reading the title would be put on notice that the act dealt with the general subject of suits for reimbursement for such improperly paid checks and that such person—put on notice by the title—on reading the act would discover the necessity for the giving of notice upon receipt of the said checks.

But we do not think that that decision is applicable, for we cannot believe that a litigant reading the title of the "pauper act", which refers only to the pauper,

would be put on notice that he himself might be made liable for such costs.

Counsel for movers also cite Peoples Homestead & Savings Association v. Masling, 185 La. 800, 171 So. 36, in which the entire question here under review was discussed by the Supreme Court. There, however, the title of the act was all-inclusive, stating plainly that it was intended by the framers that the act should "codify" all the acts of the state concerning building and homestead associations and should prescribe the rights and obligations and duties of such corporations and members. The provision in the body of the act which was under attack had not been contained in any of the previous statutes concerning homestead associations and it was, therefore, contended that, since the title of the act under attack stated that the purpose was to codify the statutes of the state, the body of the act could not go further and contain new provisions not theretofore found in previous statutes. The Supreme Court merely said that, though one of the objects was to codify previous statutes, the title also provided for various new matters apparently not theretofore included in those previous statutes. At any rate, the title showed plainly to anyone reading it that it was intended to be a complete enactment covering all of the rights and obligations of homestead and building and loan associations, members thereof and persons dealing therewith. Surely the same cannot be said of the statute under attack here. The title here is quite restrictive, containing, as we have said, no reference whatever to the possibility that any person litigating with a pauper is in any way affected thereby, except possibly to the extent that such litigant, if successful, may not be able to secure from the pauper repayment of the costs expended by such successful litigant. Surely there is nothing to indicate that he, —the other litigant—when compromising with the pauper, may himself be made liable for court costs.

In Mason v. New Orleans Terminal Company, 143 La. 616, 79 So. 26, the Supreme Court, for two reasons, held Act No. 187 of 1912 to be violative of the state constitution. One of these was that the object was not expressed in the title. The title provided for the abolishing of the defenses of fellow-servant and of assumption of risk. The body of the act abolished these defenses only in suits against public service corporations. The Supreme Court said that there was nothing in the title to indicate the limited effect of the statute and that there could be no doubt that any person—whether official of public service corporation or not—reading the title would not have been put on notice that he might be affected thereby. In other words, the title was held to be defective in that it was so broad that it did not indicate that the body of the act was limited to one particular class of litigants.

Here the title of the act is very limited and indicates that it affects only one particular class of litigants, whereas in the body it is sought to affect another group entirely. We think the title is fatally defective in that it in no way "indicates" that opposing litigants are in any way affected by the said statute.

We see no necessity that we discuss the other contentions made.

It is therefore ordered, adjudged and decreed that the judgments appealed from be and they are hereby annulled, avoided and reversed, and that the rules of Anthony Herrle, Clerk of the First City Court of New Orleans, and James Dempsey, Constable of the First City Court of New Orleans, be and they are dismissed at their cost.

Reversed.