ROGERS, Justice.
 

 Rhoda Jackson, as tenant, brought suit in the First City Court of New Orleans against Joseph Hart, as landlord, and the London & Lancashire Indemnity Company of America, his insurance carrier, to recover $298.50 as damages for personal injuries resulting from falling plaster in the leased premises. Plaintiff’s, suit was brought in forma pauperis, and after issue joined but before trial, it was compromised for $75.00, which amount was paid to plaintiff. As plaintiff availed herself of the provisions of Act. 156 of 1912 (commonly referred to as the Pauper Act), the usual fees of the Clerk and of the Constable of the First City Court were not paid when due, nor were they paid at the time the compromise settlement was effected.
 

 . Anthony Herrle, Clerk, and James Dempsey, Constable of the First City Court of New Orleans, therefore, filed rules in that court against Rhoda Jackson, Joseph Hart, and the London & Lancashire Indemnity Company, praying that respondents be condemned solidarily to pay movers’ costs. Herrle, the Clerk, claimed $16.30 as his costs, and Dempsey, the Constable, claimed $5.00 as his costs. Movers’ claims were predicated on the provision in section 3 of Act 156 of 1912, providing that “should any compromise be entered into contrary to this provision [the provision that no compromise shall be effected without the prior payment of costs], each party thereto shall be liable to said officers for the amount of said costs accrued at the.time of said compromise.” (Brackets ours.)
 

 Rhoda Jackson made no appearance in answer to the rules, but Joseph Hart and the London & Lancashire Indemnity Company appeared and challenged the constitutionality of the statutory provision on which the claims of the movers are based.
 

 The judgment of the First City Court was in favor of the plaintiffs in rule as prayed for. From this judgment Joseph Hart and his insurance carrier appealed to the Court of Appeal for the Parish of Orleans, which court maintained the plea of unconstitutionality, annulled the judgment, and dismissed the rules. 186 So. 747. The case is now before us on a writ of review.
 

 Defendants in rule pleaded that the part of section 3 of Act 156 of 1912, which
 
 *1073
 
 makes litigants compromising with pauper' litigants liable for the accrued costs, is unconstitutional in that the body of the act is broader than its title. Defendants in rule contend that the title of the act is insufficient to convey notice of the legislative intention to make a party litigant liable for the costs incurred by another party litigant whose claim is compromised. The title of the act reads as follows:
 

 “An Act To authorize litigants who are unable to pay costs to litigate as plaintiff, defendant, or intervenor, in the courts of this State without the previous or current payment of costs and without giving a bond for costs, and fixing the extent, terms, conditions and manner of exercising the right herein granted.”
 

 The provision of the act under attack has already been set forth herein.
 

 Section 16, Article 3 of the Constitution of 1921 provides that: “Every law enacted by the Legislature shall embrace but one object, and shall have a title indicative of such object.” Under corresponding sections in preceding constitutions, it was required that the object of the law be “expressed*’ in its title. The effect of the changing of the wording of the constitutional provision was to relax the previous requirement that the statute must “express” its' object, so now all that is required is that the title of the statute should be “indicative” of its object. The constitutional provision must be construed broadly rather than narrowly with a view of effectuating, not of frustrating, the legislative purpose. This is the rule prevailing everywhere for the construction of such a constitutional provision. In State v. Martin, La.Sup., 189 So. 109, 110, recently decided, this Court quoted and approved the statement of the prevailing rule announced in Corpus Juris, volume 59, page 809, viz.: “In determining the sufficiency of the title of a statute, under a constitutional provision requiring the subject of an act to be expressed in its title, its language should be ’ reasonably and liberally interpreted, in the light of the general legislative purpose * * * and should not be technically or critically construed, nor should it be held insufficient unless the question is free from doubt.” In the Martin.case, the Court also referred to and reaffirmed the well settled rule of this State that, whatever is germane and incidental to the purpose may be set out in the title, but if the body of the act embraces cognate matter not strictly within the text of the title, such matter will, nevertheless, be covered by the title. Since the means adopted to carry out a law is not an object of the law, such means need not be mentioned in the title. Marr’s Crim.Juris., vol. I, pp. 11, 12.
 

 In the Martin case, this Court reversed a ruling of the district court sustaining a motion in arrest of judgment and ordered the ■ discharge of the defendant who was prosecuted for the unlawful possession of a narcotic drug. The motion in arrest was based on the alleged unconstitutionality of that part of section 2 of Act 14 of the Second Extra Session of 1934, making it unlawful to possess a narcotic drug except as authorized in the act, on the ground that the possession of narcotics is not included nor referred to in the title of the
 
 *1075
 
 statute. After reviewing the law governing the question, the Court reached the conclusion that the alleged unconstitutional portion of the statute was embraced and by necessary implication was indicated in the title of the act, and for that reason the Court overruled the motion in arrest.
 

 Another case recently decided by this Court, upholding the rule of liberal construction, in a case such as this, is W. M. Barret, Inc., v. First National Bank, 191 La. 945, 186 So. 741. In that case the Court maintained the constitutionality of Act 163 of 1934 limiting the time within which actions may be brought to enforce the liability of a bank for the payment of forged or raised checks, holding that the title of the statute sufficiently complied with the constitutional requirement as to the titles of legislative acts. In so holding, the Court declared: “The title of an act is not required to be a complete index to every section, but it is sufficient if the title in general terms directs attention to the purposes of the law.”
 

 It was successfully argued in the Court of Appeal that there was no word or hint in the title of Act 156 of 1912 that the body of the Act imposed any obligation on the party opposing the pauper litigant; that there is no suggestion that the act contains any limitation upon the right of any such opposing party to compromise the suit,, which is a well recognized right under Article 3071 of the Civil Code. We do not think the argument is sound.
 

 The adoption of Act 156 of 1912 created an innovation in the established procedure of this State for the payment of costs in judicial proceedings. Until the adoption of that statute it was a settled policy of the State that every litigant, regardless of his financial condition, must pay or secure court costs in advance, the policy being crystallized as to the Parish of Orleans in Act 136 of 1880, and as to the other parishes, in Act 203 of 1898.
 

 Until the year 1912, there was no necessity for any inquiry being made as to the responsibility for court costs, because those costs were always payable or secured in advance. In fact, the payment or securing of costs was a prerequisite to the filing of suit. As the result of the adoption of Act 156 of 1912, an entirely different situation was created. The title of that act plainly indicated a change in the settled policy of the State as regards pauper litigants, because it expressly declared that the legislation was “An Act To authorize litigants who are unable to pay costs to litigate * * * without the previous or current payment of costs and without giving a bond for costs.” This declaration in the title clearly indicated that the change brought about by the act in the judicial procedure of the State was sufficiently drastic to charge affected persons with the duty of inquiring as to the contents of the act. As is well said by the Chief Justice in his concurring opinion in the Barret case, “it is not likely that any person having a sufficient interest in the subject of this legislation to read the title of the act would not be prompted thereby to read the act iself, or would be so negligent as to read only the title of the act.”
 

 
 *1077
 
 The order on the petition in the principal suit plainly shows that the plaintiff was authorized to prosecute her action under Act 156 of 1912 without the prior payment of costs. When the case was filed there was stamped on the docket, in large letters, “Act 156 of 1912,” and a copy of •every pleading served on 'the defendants hears that stamp. In these circumstances, it is obvious the defendants knew that plaintiff was prosecuting her suit in forma pauperis. When they were served with ■citations and copies of the petition under a legislative act, the title of which proclaimed that it had changed the settled policy of the State relative to the payment of costs in judicial proceedings, they were extremely negligent if they failed to read the entire statute. If the defendants in the principal suit had read the legislative act, which it was their duty to do, they would have observed, as was held in White v. Walker, 136 La. 464, 67 So. 332, that the act does not relieve the pauper of the eventual obligation to pay court costs. It •only relieves him of the obligation of paying court costs in advance, or as they accrue, or of furnishing security for such costs. They would have observed also that a litigant unsuccessfully opposing a pauper litigant and condemned to pay the costs must do so; and further, that no -compromise could be effected by the parties litigant without the prior payment of the accrued costs, under penalty of their being liable for the amount of such costs.
 

 It may be that the words, in the title “fixing the extent, terms, conditions and manner of exercising the right herein granted,” that is, the right granted to a party to litigate without the prior payment of or furnishing security for costs, are not all embracing, but we think they are broad enough to cover the details set- forth in section 3 of the statute relative to the payment of costs. Section 3 provides that an account shall be kept of all costs; that if there should be judgment in favor of the pauper litigant, the opposing party condemned for costs shall pay the same; that no compromise shall be effected without the prior payment of costs, and that if a compromise he entered into without observing this requirement, the parties litigant shall be liable for the accrued costs.
 

 Act 156 of 1912 does not directly or impliedly repeal the provisions of the fee bill, the general principle of which is that costs of court shall be paid unless expressly excepted. This principle is recognized by the act itself, because it creates an exception in favor of a pauper litigant with the proviso that should he be cast he shall be condemned for costs (section 4), or should he recover by judgment or by compromise the court costs must be paid by priority to the officers entitled thereto (section 3).
 

 The provision in the statute that no compromise shall be effected until the accrued court costs shall first have been paid is a logical and necessary accompaniment of the requirement that court costs should eventually be paid. It is one .of the “conditions of exercising the right” granted by the statute to paupers to litigate their claims without the prior payment of costs. The statutory provision imposing liability for the unpaid costs upon parties entering
 
 *1079
 
 into compromise agreements, contrary to the provision requiring the payment of costs, is a reasonable and presumably efficacious means of insuring that deferred and unpaid costs shall be eventually paid and is clearly incidental to the right of the parties affected by the act to compromise their differences.
 

 The case of Grinage v. Times-Democrat Publishing Company, 107 La. 121, 31 So. 682, 683, presents a question somewhat similar to the one presented in this case. There the Court was called upon to consider Act 136 of 1880, which was an act to fix the fees of the clerks of the criminal and civil district courts and other officers and to regulate the collection of those'fees. The constitutional requirement in effect at that time (Article 31 of the Constitution of 1898) was not as broad as the constitutional requirement in effect at this time (section 16, Article 3 of the Constitution of 1921). Under the Constitution of 1898, it was required that the object of the law be expressed in its title, whereas under the Constitution of 1921 all that is required is that the title of the statute shall be indicative of its object. In the Grinage case the Court held that the expression in the title, “to regulate the collection of said fees,” was broad enough to cover the provision in the body of the act authorizing the defendant to exact of plaintiff a bond for costs. In that case the title admittedly did not refer directly or indirectly to any'security to be given for costs. Admittedly, also, the bond there was not given at the instance of the clerk, nor was it in his favor. Under Act 136 of 1880, the clerk had no interest in the security for costs which under the terms of the act the defendant was authorized to exact. The clerk’s fees were payable in advance and had already been paid, so that it was a matter of no importance to him whether a bond was given or whether defendant ever recovered the costs which it paid. Nevertheless, under a constitutional provision which was stricter in its requirement than the constitutional provision now in effect, the Court in the Grinage case held that the expression, “regulating the collection of costs,” appearing in the title of the act was “broad enough to cover the requirement of security for costs which the statute authorizes the defendant to exact of the plaintiff.”
 

 We think that the challenged provision of section 3 of Act -156 of 1912 is germane to the purpose expressed in the title of-the act, which is amply sufficient to place all affected persons upon .reasonable notice to read the act itself.
 

 For the reasons assigned, the judgment of the Court of Appeal is annulled and the judgment of the First City Court of New Orleans is reinstated and made the final judgment -of this Court. The respondents are to pay the costs of appeal and of this proceeding.
 

 FOURNET, absent.