LANDRY, Judge.
Plaintiff, The Associated General Contractors of America (Contractor) seeks by this action to enjoin the Police Jury of Pointe Coupee Parish and its members individually (Police Jury) and the State Department of Highways (Department) from jointly constructing a certain road and bridge in Pointe Coupee Parish without advertising the project for bids and letting same by contract to the lowest responsible bidder. The trial court dismissed plaintiffs’ action as to the Department on that defendant’s exception of no right of action. After trial on the merits adversely with the Police Jury, the lower court rejected plaintiffs’ demands as to the Police Jury on the basis that the work was not a “major project.” The significance of this latter determination will hereinafter be shown. Contractor has appealed. We find the trial court erred in declining to issue the injunction prayed for and accordingly reverse the judgment rendered below.
We are here concerned solely with questions of law inasmuch as there is no controversy regarding the circumstances which generated this particular lawsuit.
In 1966 defendant Parish commenced acquiring right of way for a section of road measuring 9,600 feet in length (1.8 miles) to run from the west side of Louisiana Highway 1 to the east side of the Morgan-za-New Roads Highway. A right of way 80 feet wide was acquired from the several landowners involved. The proposed construction will generally parallel the site of a new parish hospital. In its course, the roadway will cross a small stream known as Portage Canal. To span the canal, a bridge of six span construction, approximately 115 feet long, will be required.
It is conceded the proposed project will make the new hospital more readily available to the residents of the northern part of Pointe Coupee Parish in that it will eliminate their traveling through the Town of New Roads to reach this facility. Also admitted is the fact it will enable transient motor traffic to by-pass the Town of New Roads. Appropriately enough, the project has become locally known as “the Hospital Road.”
*303 The proposed construction, according to the stipulated facts, consists of:
“ * * .* clearing and grubbing of the right of way and preparation of the road bed, the digging of lateral drainage ditches, formation of embankments, the installation of metal or concrete pipe culverts, the placing of gravel on the road bed, the construction of a railroad crossing, piledriving and completely building a six (6) span bridge across the Portage Canal (a distance of approximately 115'). The proposed bridge will have six (6) 19' spans, timber pilings, precast concrete deck slabs and deep hand rails.”
Cost of construction, including the bridge, is estimated to be $50,000 if the roadway is hardsurfaced, $40,000 if surfaced with gravel only. Of said estimate, the bridge represents the sum of $19,858.42.
By virtue of a resolution adopted at its February, 1966 meeting, the Police Jury requested the Department’s aid in performing the work required to construct the bridge over Portage Canal. It is conceded the resolution is tantamount to a contract between the Police Jury and the Department. Basically the agreement provides the Department shall construct the bridge with its own maintenance personnel. The contract also estimates the cost of the bridge at $19,858.43. Upon completion of the structure, full responsibility for its maintenance is assumed by the Police Jury. It is conceded materials required for the bridge amount to $12,948.86 and were purchased by the Department through public competitive bidding. The remainder of the bridge cost represents reimbursement to the Department of the expense involved in furnishing the personnel for the work.
As the filing of this action on April 17, 1968, work on the project had progressed to the point that some gravel had been placed on the roadbed and a number of pipes and culverts had been installed to prevent interception of drainage facilities crossed by the road.
Contractor grounds its action upon the provisions of LSA-R.S. 38:2211, commonly known as the “low bidder” law. Essentially Contractor urges the action of the Police Jury contravenes the letter and spirit of the applicable statute and construction of the proposed project should be enjoined until the work is advertised for competitive bids.
Those portions of Section 2211, supra, peculiarly applicable to the case at hand are the first sentence of the first paragraph and the third paragraph which, respectively, read as follows:
“All public work to be done, exceeding the sum of two thousand five hundred dollars, including both labor and materials, by any public corporation or political subdivison of the state and all purchases of materials or supplies exceeding the sum of one thousand dollars to be paid out of public funds shall be advertised and let by contract to the lowest responsible bidder who has bid according to the contract, plans and specifications as advertised; and no such public work shall be done and no such purchase shall be made except as provided in this Part. * * * ”
******
“This Section shall not apply in cases of extreme public emergency where such emergency has been certified to by the governing authority of the agency or body, and notice of such public emergency shall, within ten days thereof, be published in the official journal of the body or agency proposing or declaring such public emergency. Neither shall this Section apply for labor necessary and used in the maintenance of public works built and completed. Provided, further, that nothing herein shall prevent municipalities or other public bodies from using their own regular maintenance employees for labor necessary in construction or extension of municipally owned and operated public utilities or other public property, however, not to include *304 construction of buildings or other major projects.”
In essence Contractor maintains construction of the road and bridge is a “major project” of the Police Jury, therefore, under the provisions of paragraph three, the work must be advertised for bids. Appellant also maintains the Department is bound by this same provision and must consequently advertise the bridge for public bidding.
The Police Jury argues first that LSA-R.S. 38:2211 is unconstitutional in that the title of the act is not sufficiently descriptive of the scope and extent of the statute as required by Article III, Section 16, of our State Constitution. Alternatively, the Police Jury contends the work is not a “major project” and therefore comes within the exception which allows a municipality to use its own maintenance forces in the construction of works which are not buildings or major projects.
The Department makes the same arguments as the Police Jury. In addition, the Department maintains it is not subject to injunction inasmuch as certain provisions of LSA-R.S. Title 48, a special statute applicable to the Department alone, permits the Department to construct roadways with its own maintenance personnel without advertising the work for bids. Stated otherwise, the Department contends LSA-R.S. Title 48, particularly Sections 214 and 215 thereof, are special statutes which are not repealed by the general law contained in LSA-R.S. 38:2211 because the general law does not indicate intent to repeal the special statute so clearly and evidently that such intent is not open to doubt. In extension of this position, the Department argues the two statutes must be considered together and both be given effect, if possible.
The source of LSA-R.S. 38:2211 is Act 73 of 1926. Subsequent to this initial enactment, the statute has been amended on numerous occasions, the latest revision occurring with the passage of Act 589 of 1954, the title of which reads in full as follows:
“To amend and re-enact Section 2211 of Title 38 of the Louisiana Revised Statutes relative to advertisement and letting to lowest responsible bidder.”
It is axiomatic that laws are entitled to great respect and are therefore presumed constitutional. Guillory v. Jones, 197 La. 165,1 So.2d 65.
Constitutional Article III, Section 16, requiring every act shall embrace but one subject and have a title indicative thereof must be broadly construed with the view of effectuating rather than frustrating the legislative purpose. Jackson v. Hart, 192 La. 1068, 190 So. 220.
The title of an act may express one general purpose and fulfill the requirements of Constitutional Article III, Section 16. State ex rel. Porterie v. Smith, 184 La. 263, 166 So. 72.
The requirements of Constitutional Article III, Section 16, demand only that the title of an act shall be appropriate to the subject matter of the law and shall not be misleading as to any purpose intended to be accomplished therein. Succession of Pipitone, 204 La. 391, 15 So.2d 801.
It appears the several amendments to Act 73 of 1926, did not produce a statute requiring advertisement of public works for bid, but rather only a method to be employed in the event a state agency elected to call for bids. Due to the wording of the title and body of the statute as it formerly read, it was so held in Conley v. City of Shreveport, 216 La. 78, 43 So. 2d 223, and followed in Labit v. Terrebonne Parish School Board, La.App., 49 So.2d 431. In 1952, however, to overcome the effect of the Conley and Labit decisions, supra, the legislature adopted Act 370, the title and body of which expressly required that all public work to be done and materials or supplies to be purchased by any public corporation with public funds *305 shall be advertised and let by contract to the lowest responsible bidder. Said Act 370 of 1952 required, inter alia, publication in a local daily paper at least three times within ten days, the first publication to appear at least ten days before opening of bids. It also provided that where there was no daily newspaper, the publication must be once weekly for three weeks the first publication to appear at least 15 days before opening bids.
We note that Act 589 of 1954, makes one change only in Section 2211, namely, the advertisement period is extended from 10 to 15 days. Such a change does not introduce a new subject matter; it is appropriate to the title which purports to amend Section 2211, LSA-R.S., relative to advertisement and letting to lowest responsible bidders; it is not misleading and merely effects a relatively minor change in the previously established advertising time.
We find the instant matter readily distinguishable from A. & M. Pest Control Service, Inc. v. LaBurre, 247 La. 315, 170 So.2d 855, relied upon by defendants. The cited authority concerned the validity of Act 312 of 1958, which amended L.R.S. 40:1270. The title of Act 312 of 1958 read simply:
“An act to amend and re-enact Section 1270 of Title 40 of the Louisiana Revised Statutes of 1950, relative to reporting termite control contracts.”
The effect of the body of Act 312 of 1958 added an entirely new provision prohibiting licensed operators obtaining noncompetitive contracts from employees as a condition precedent to employment.
Obviously the title of the act concerned in LaBurre, supra, gave no indication whatsoever of an amendment adding an ■ entirely new provision not within the purview of the Act amended, and was therefore void in contravention of Constitution Article III, Section 16.
Such is not the case in the matter at hand. Here the amendment merely changes the previously established advertisement time. Such an alteration was within the indicated scope of the act’s title.
The portions of LSA-R.S. 38:2211 quoted hereinabove leave no doubt that its provisions mandatorily required advertisement for bids on all public works exceeding $2,500 and all purchases of materials and supplies in excess of $1,000. The first paragraph of the statute so states in crystal clear, unmistakable language. In equally unambiguous terms, the same paragraph makes the mandate of the statute applicable to all agencies, departments and subdivisions of the state.
Equally evident is the fact that Paragraph 3 of the statute expressly exempts three designated conditions or circumstances from the mandatory effects of the law. These are: (1) emergencies duly certified; (2) labor necessary to maintain public works already built and completed, and (3) use of regular maintenance personnel to construct or extend municipally owned and operated public utilities or other public property, exclusive however, of construction of buildings or other major projects. The obvious effect of the concluding phrase of the last sentence of paragraph three is to exclude construction of buildings and major projects from the third category of exemptions. Stated otherwise, the intent of the statute is that no public project may be constructed with regular maintenance personnel without advertisement for bids if the work undertaken is the construction of a building or other project of a major nature.
Unquestionably the project involved in this action is a single work, namely, construction of a public road, the bridge required being merely a necessary adjunct thereof. It is equally clear the work is solely a Police Jury project inasmuch as it was conceived by that body and the entire cost in both material and labor is in effect to be defrayed by the parish governing authority. Under the circumstances of this case, the state’s participation is relatively *306 nominal since it is to be reimbursed the cost incurred in furnishing its maintenance employees to construct the bridge. Nor can there be any doubt but that the Police Jury is within the category of “any political corporation” covered in paragraph one of the statute and said body therefore made subject to the mandatory provisions of the law.
It is also clear that the Police Jury is included in the term “other public bodies” mentioned in the above noted third exemption meaning the Police Jury is not required to advertise for bids but may properly use its own regular maintenance forces to construct public projects which are neither buildings nor major projects.
It follows that the sole question to be decided quoad the Police Jury is whether the project is a major one. If it is major in nature, the Police Jury could not undertake the work without advertising for bids. That it has herein enlisted the aid of another state department or agency is a matter of no import. Being a Police Jury project, purely and simply, the Police Jury may not do indirectly or by contracting with others that which the law forbids it to do directly on its own.
Unfortunately the legislature did not define the term “major project” contained in the pertinent statute. Under the circumstances the court must interpret the term.
We note that Webster’s Third New International Dictionary, Unabridged, 1961 Edition, defines “major”, insofar as concerns its meaning herein, as “Notable or conspicuous in effect or scope, considerable, principal. * * * ” As applied to the case at bar, it appears that if the project is notable or conspicuous in effect or scope, or of considerable proportion, it falls within the classification of a major project as the term is used in the statute. The definition is, of course, relative depending upon the facts and circumstances of each individual case. A project which might be considerable or notable in scope and therefore “major” in one instance could very well be inconsequential and minor under differing circumstances. For example, a $50,000 road project would indubitably be minor if undertaken by our state or federal government. On the other hand, a work of the same magnitude could easily be major when contemplated by a small municipality or parish having a limited annual operating budget.
In this instance, the project in question will be the first road constructed by the Police -Jury within the five year period immediately preceding institution of this action. It also appears the total Police Jury budget for the year in which the work was undertaken was $287,500.00. By simple mathematics it is shown the project will cost the Police Jury in excess of j/£th of its annual budget. In our judgment the work in question is major as it is considerable in size and notable in scope and effect in the light of the circumstances herein.
We wish to make it clear we do not impugn the motives of the Police Jury herein or ascribe to them any improper or ulterior purpose. On the contrary, it appears the Police Jury acted in all good faith and in what it considered to be the best interest of the parish. Be that as it may, the action taken, apparently with the best of intentions, contravenes the pertinent statute thus entitling Contractor to issuance of the injunction sought.
The Department maintains LSA-R.S. 48:214 and 215 are special statutes which expressly exempt it from the effects of LSA-R.S. 38:2211.
The pertinent portion of Section 214, supra, reads as follows:
“The department may enter into written agreements with parish governing authorities for the construction or improvement of rural mail routes and farm-to-market roads. Under these agreements, the department may undertake to perform all or any part of the work of construction or improvement, or may *307 contribute materials or funds therefor. * ifc ‡
Section 215, supra, is quoted in full, thusly:
“When, in the opinion of the director, such work will reasonably further the best interests of the state and the state highway system, the department may perform all or any part of the construction and improvement of roads, streets, bridges, and culverts which are under the jurisdiction of any department, institution, agency, commission, political subdivision, or political corporation of the state.
The department may construct, improve, gravel, and maintain all school bus routes within the state whenever funds are available therefor.”
In substance the Department argues it is immune from injunction in the premises inasmuch as the cited statutes authorize it to perform the work in question using its own maintenance forces and without advertisement.
In view of the conclusions hereinafter reached, we pretermit all consideration of the Department’s alleged rights and powers pursuant to LSA-R.S. 48:215.
Assuming, arguendo, the Department possesses the professed authority, it is a matter of no moment under the circumstances peculiar to this case. The project is not one undertaken by the Department pursuant to Section 215, supra, which seemingly envisions works sought to be performed by the Department as projects of its own. The work in question, however, is most certainly a Police Jury project undertaken pursuant to' a written agreement authorized by Section 214, supra. We find in Section 214, supra, nothing indicating legislative intent to empower a Police Jury to contract with the Department in contravention of the express prohibition contained in Section 2211, supra. As here-inabove stated, the Police Jury may not do indirectly, or in contractual concert with some other state agency or Department, that which the Police Jury may not do directly on its own. Such circumvention of express law must be prevented for reasons all too obvious. For the same reasons the Department may not, through the medium of a contract, undertake to perform work for and on behalf of a Police Jury, and at Police Jury expense, in a manner forbidden to the Police Jury by express law. We hold, therefore, the Department may not utilize its avowed lawful prerogatives to achieve performance of work for another agency and at such agency’s expense in a manner forbidden to such other agency by statute. For this sole reason, we are constrained to enjoin the Department from proceeding further under the contract in question.
It is settled that a state agency or department may be enjoined from exceeding the authority vested in it by law. Cruse, et al. v. Police Jury of LaSalle Parish, 151 La. 1056, 92 So. 679; Luneau v. Avoyelles Parish Police Jury, La.App., 196 So.2d 631.
Accordingly, it is ordered, adjudged and decreed the judgment of the lower court sustaining the exception of no right of action filed herein by defendant, Department of Highways, State of Louisiana, and dismissing plaintiffs’ demands as to said defendant, be and the same is hereby annulled, reversed and set aside.
It is further ordered, adjudged and decreed that the judgment of the trial court in favor of defendant Police Jury of Pointe Coupee Parish and against plaintiffs herein on the merits, rejecting and dismissing plaintiffs’ demands for an injunction, be and the same is annulled, reversed and set aside.
It is further ordered, adjudged and decreed that there be judgment herein in favor of plaintiffs, The Associated General Contractors of America, Inc., Louisiana Highway and Heavy Construction Branch and John L. Morrison, Sr., and against defendants, the Police Jury of Pointe Coupee *308 Parish and the Department of Highways, State of Louisiana, permanently enjoining and prohibiting said defendants, their agents and employes, from proceeding with all further construction or the purchase of material for construction of that project known as “Hospital Road,” measuring approximately 1.8 miles in length, including the proposed bridge over Portage Canal, connecting the paved highway now existing along the easterly side of False River, near the Parish Hospital site in Pointe Coupee Parish to the Morganza-New Roads paved highway, pursuant to the agreement contained in the February, 1968, resolution adopted by the Police Jury of Pointe Coupee Parish.
It is further ordered, adjudged and decreed that defendants, the Police Jury of Pointe Coupee Parish and the Department of Highways, State of Louisiana, pay all costs of these proceedings which may be assessable against them by law.
Reversed and rendered.