BREAUX, C. J.
The state of Louisiana, through her prosecuting officer, in a bill of information, charged the defendant, Tom Hincy, an employs and field manager of the Crowley Oil & Mineral Company, with willfully and knowingly draining, or permitting to be drained, the waters from the wells, reservoirs, or tanks of the Crowley Oil & Mineral Company salt water into a freshwater stream or drain leading to Bayou Des Cannes, in the parish of Acadia, through which stream water is pumped for irrigating rice.
The defendant pleaded autrefois acquit.
As this plea was not mentioned by defendant in argument, we refer to it only as an incident, and conclude that it is of no importance.
Subsequently the defendant, through learned counsel, presented a motion to quash the information, on the ground of the unconstitutionality of the law under which it was prosecuted. Furthermore, that two objects were expressed in the title, and that the act itself has two or more objects.
The two objects referred to are; First, the protection of the rice planters and owners of irrigation canals. Secondly, protection of the fish.
It is also contended by defendant that the act seeks to regulate labor, or to regulate the oil industry, and that this was done by the lawmaking power without enactment, directed to other industries, on the same subject. In other words, that the act illegally discriminates against the oil industry, while other industries are free to do as they please.
The district court sustained the motion to quash, and the state has appealed.
On appeal, he urged that, as no bill of exceptions had been taken to the judge’s ruling sustaining the motion to quash, the ruling must stand, and that the state was *623 without authority to proceed further with the case.
We can only say that, in our opinion, the objection of defendant is not sustained by the rules of practice. These rules authorize the court to review errors apparent on the face of the record.
[1] While it is true that a hill of exceptions is necessary, in order to bring up evidence needful to a decision of the point raised, it is otherwise if the issue is one of law exclusively.
Before taking up the issue for decision, we will state that the title of the act relates to the protection of the rice planters and the protection of the owners of irrigation canals by prohibiting the pollution of streams, occasioned by the inflow of salt water, -of oil, and of other substances. Furthermore, the title relates to the protection of fish in the streams.
We will further state that in the body of the law the acts sought to be prohibited are more specifically described than they are in the title. It is made unlawful and a misdemeanor for any offlcer, manager, or employs of any corporation to knowingly and willfully let salt water, or other noxious and poisonous substances, running from pumps, reservoirs, wells, or oil fields, flow into any natural stream or drain from which water is taken for irrigation purposes.
This prohibition does not prevail between September 1st and March 1st of each year; the prohibition prevails between March 1st and September 1st of each year — that is, the closed season. Then there follows in the act a statutory order, with which we are not concerned in this case, to owners and operators to provide reservoirs or tanks, and to keep the waters out of the waterways during the closed season, ordering these owners to pay for a watchman, night and day, to prevent leaks, breaks, secret pipes, or other violations of law. The act also commands the owners and operators of oil industries to plainly indicate to whom each reservoir or tank belongs by posting, and further directs these owners to hold these tanks and reservoirs subject to inspection by the local authorities.
The defendant is not charged with violating any part of the latter portion of the law*; that is, that portion beginning with the words, “and ordering them further to pay for a watchman.”
[2] Recurring to defendant’s ground of defense, the title should unquestionably be liberally construed. An act should not be set aside, declared null, unless it be evident that the constitutional requirement has been violated.
The same is true regarding the body of the act, if it contains two objects.
[3, 4] We have not found that either contained two objects, separate and distinct, and of such a nature as affecting the validity of either the title or the body of the act. A general object is expressed, which does not necessarily vitiate the whole law. Where the title expresses a general object, the addition of subdivisions of that object does not perforce render the whole title null. Act No. 183 of 1910.
If a rigorous interpretation were adopted and nice technicalities followed, it would result in defeating, without cause, the intention of the lawmaker.
There is no necessity of the title being a complete index to every section of the act. It is only necessary that it shall, in general terms, direct attention to the purposes of the law; and if the different parts of the act lead to one conclusion, point to one object, it would not then be reasonable to set aside an act, in so far as requirements have been followed. ■
[5] We conclude upon this point that one object is expressed in the title — that is, the protection of the waters from contamination *625 —and that the reference to the effect of this contamination, as made in the act, is not fatal to that part of the act to which the defendant is called upon to respond. The title declares in the index the object, and does not go beyond the limit laid down in the article of the Constitution. The purpose is to prevent surprise in legislation.
The title was all-sufficient for the main purpose. It is sufficiently particular, and not too general. It gives fair notice of the object, so as to reasonably lead into an inquiry as to the nature of the bill offered. There is nothing misleading about it, and directing attention from some covert purpose of the bill.
In the latter case, it would be otherwise. There was no attempt made at blending different subjects. There was a natural connection between the different purposes. It is upon one subjechmatter, though it deals with several branches of the subject. So much as to the title.
The next objection raised by the defendant is directed against the body of the act, on the ground that it also contains two objects, and for that reason it, also, is unconstitutional.
We will state at this time that one of these objects is eliminated by the fact that it is not embraced in the title. Nothing in the title indicates what that object is. See State v. Duson, ante, p. 488, 58 South. 159, this day handed down.
But, taking up the objection with reference to the charge brought against the defendant of being an owner or manager, and allowing noxious waters and oil to flow into one of the streams of the state, we arrived at the conclusion that to that extent the act is not unconstitutional; that the purposes are germane and consistent, one with the other; it all leads to the necessity (as deemed proper by the Legislature), of protecting the streams in the manner expressed in the act. The act is not confusing nor ambiguous after eliminating that portion which has been declared illegal in the case cited above.
We will state that a portion of the act may be constitutional and another portion unconstitutional.
It will be borne in mind that we have decided that a portion of the act is unconstitutional, because the object is not specified in the title.
If one of the objects is not specified in the title, and the other is, as to the latter, it is valid.
In a note in Cooley on Constitutional Limitations (7th Ed.) p. 213, it is said, if the object of the act is expressed in the title, and another is not, the authorities generally hold that it is legal as to the object expressed in the title.
[6] The next contention of defendant is that the law is specially directed against those engaged only in the oil-producing industry, contrary to article 48 and article 2 of the State Constitution and of the fourteenth amendment, directed against partial legislation.
In so far as relates to a local law, we will state that it is not local in its application, nor is it special, as it applies to every section- and to all alike whose industry may become a nuisance because of negligence on the part of those in whose charge it is. It denounces all infringement alike. It is not partial legislation.
At common law, without particular enactment upon the subject, a nuisance may be suppressed for good cause.
It follows that the lawmaking power can adopt statutes in order to prevent a nuisance. The state certainly has the authority to abate a nuisance.
If the streams are in any way polluted, it would not be less than a nuisance.
[7] If the laws be otherwise unobjectionable, all that can be required of these cases is that they be general in their application to *627 the class or locality to which they apply, and that they are then public in character; and of their propriety and policy the Legislature must judge.
The law here comes up to that standard in every respect. Those persons against whom the act is directed are not made subject to a peculiar rule; nor is there a special obligation or burden imposed. There is equality of rights, applying to all engaged in the business who violate the law by in any way allowing the streams to be polluted.
The lawmaking power has adopted, as we understand, a law in interest of the general public. There was no discrimination, nor is it contended that there was any discrimination, in the manner in which it was attempted to enforce the law, to the extent that it is enforceable.
We are of opinion that it is enforceable.
There remains only one alternative, and that is to set aside the judgment of the district court.
It is therefore ordered, adjudged, and decreed that the judgment appealed from is annulled, avoided, and reversed. It is further ordered, adjudged, and decreed that this case be remanded to the district court, to be there reinstated on the docket and tried and decided in accordance with the views herein expressed.