PONDER, Justice.
 

 O. Dolan Ricks, a resident and taxpayer of the Parish of East Baton Rouge, brought this suit, attacking the constitutionality of Act 172 of 1940, known as the “State Civil Service Law.” In the alternative, he seeks to have Act 381 of 1940 decreed unconstitutional on the ground that it was illegally submitted to the voters as a proposed constitutional amendment; in the further alternative, in the event that Act 172 of 1940 is not declared unconstitutional, that Section 48 of the Act be decreed inoperative until July 1, 1942; and in the further alternative, to have Item No. SS of Section 2 of Act 44 of 1940, State Civil Service Commission and Department of Civil Service Appropriation, decreed unconstitutional. The plaintiff also seeks injunctive relief against the Department of State Civil Service, its members and each of them, to restrain the withdrawal or the expending of funds appropriated under Item No. 55 of Section 2 of Act 44 of 1940. The plaintiff also seeks to restrain the State Auditor, L. B. Baynard, and the State Treasurer, A. P. Tugwell, from accepting or honoring any or all warrants drawn upon the funds appropriated under Item 55 of Section 2 of Act 44 of 1940.
 

 A rule to show cause why a preliminary injunction should not be granted was issued in the lower court. The defendants interposed exceptions of no right and no cause of action which were referred to the merits. Upon trial of the rule, it was agreed that the case should be considered on its merits. The lower court gave judgment in favor of the defendants, rejecting the plaintiff’s demands, overruling the exceptions, and dismissing the suit. The plaintiff has appealed.
 

 The plaintiff contends that Act 172 of 1940 is violative of Section 16 of Article III of the Constitution in that it embraces more than one object. Counsel for the plaintiff is under the impression that an additional object is- created under Paragraph 9 of Section 6 of the Act, and the failure to mention this object in the title of the act is also violative of the constitutional provision. The provision complained of, Paragraph 9 of Section 6 of the Act, provides that it shall be the duty of the State Civil Service Commission to select and appoint commissioners as provided in the City Civil Service Law. Section 5(b) of Act 171 of 1940, the City Civil Service Law, provides that two of the three members of the City Civil Service Commission shall be appointed by the State Civil Service Commission. The plaintiff further contends that Act 172 of 1940 is broader than its title in that the Director or the State Civil Service Commission is permitted to employ independent counsel to enforce the act. In support of these contentions, counsel for the plaintiff relies upon Section 16 of Article III of the Constitution and various decisions of this court' interpreting this constitutional provision.
 

 The constitutional provision relied upon has been entertained by this court on numerous occasions. The expressions of this court relative thereto in some of the most recent cases are to the effect: “It
 
 *356
 
 is not the purpose of this article to require that the title he an index to the contents of the act, or that every end and means convenient or necessary for the' accomplishment of the general object of the act be set out at length in the title, but it is deemed sufficient, under the article, that the act contain but one object and that the object be fairly stated, although it be expressed in general terms, in the title of the act. All things proper or necessary to carry out the general object, so stated in the title, are deemed to be within the scope of the title. Thornhill v. Wear, 131 La. 479, 59 So. 909; State v. Hincy, 130 La. 620, 58 So. 411; Succession of Lanzetti, 9 La.Ann. 329.” State ex rel. Porterie, Atty. Gen. v. Housing Authority of New Orleans et al., 190 La. 710, 182 So. 725, 736, quoting from Southern Hide Co., Inc., v. Best et al., 176 La. 347, 145 So. 682. “The title of an act is not required to be a complete index to every section [of the act], but’it is sufficient if the title in general terms directs attention to the purposes of the law.” Wm. M. Barret, Inc., v. First National Bank of Shreveport, 191 La. 945, 186 So. 741, citing State v. Hincy, 130 La. 620, 58 So. 411. “The * * * rule [is] that, whatever is germane and incidental to the purpose may be set out in the title, but if the body of the act embraces cognate matter not strictly within the text of the title, such matter will, nevertheless, be covered by the title. Since the means adopted to carry out a law is not an object of the law, such means need not be mentioned in the title. Marr’s Crim.Juris. vol. T, pp. 11, 12. * * * Section 16, Article 3 of the Constitution of 1921 provides that: ‘Every law enacted by the Legislature shall embrace but one object, and shall have a title indicative of such object.’ Under corresponding sections in preceding constitutions, it was required that the object of the law be ‘expressed’ in its title. The effect of the changing of the wording of the constitutional provision was to relax the previous requirement that the statute must ‘express’ its object, so now all that is required is that the title of the statute should be ‘indicative’ of its object. The constitutional provision must be construed broadly rather than narrowly with a view of effectuating, not of frustrating, the legislative purpose. This is the rule prevailing everywhere for the construction of such a constitutional provision.” Jackson v. Hart, 192 La. 1068, 1073, 190 So. 220, 222. “The pronouncements of this court are legion to the effect that the provisions in the body of a law, which are germane to the object of the legislation' need not be expressed in the title and that the title is not required to be a complete index to every section of the statute. It is sufficient if the title in general terms directs attention to the purpose of the enactment.” Peck v. City of New Orleans, 199 La. 76, 5 So.2d 508, 516.
 

 In order to judicially determine whether the statute is violative of Section 16 of Article III of the Constitution, which provides that every law enacted by the Legislature shall embrace but one object and shall have a title indicative of said object, it is necessary to first examine the body of the act in order to ascertain its purpose or aim. Peck v. City of New Orleans, 199 La. 76, 5 So.2d 508.
 

 
 *358
 
 From a reading of the act as a whole, it cannot be disputed that its aim or purpose is to establish a classified civil service to administer, control and regulate employment in the service of the State of Louisiana.
 

 In the case of Hope et al. v. City of New Orleans et al., 106 La. 345, 30 So. 842, 843, this court in defining civil service stated: “ ‘Civil Service,’ in its enlarged sense, means all service rendered to and paid for by the state or nation or by political subdivisions thereof, other than that pertaining to naval or military affairs. ‘Civil service reform’ is defined by the lexicographers to be the substitution of business principles and methods for the spoils system in the conduct of the civil service, especially in the matter of appointments. Everything pertaining to the civil service is germane to the subject with which the act under discussion deals, and is embraced within the1 scope of its object. When, therefore, the legislature embodied in the act the repeal of section 110 of the present city charter, it did not inject into the act another object. That section is to the effect that no officer or employé of the city shall be a member of or delegate to any political convention, and comes clearly within the regulation of the civil service. Consequently, it came within the scope of the one object of Act No. 89 to reaffirm it or repeal it.”
 

 In the case of Ward v. Leche, 189 La. 113, 179 So. 52, 55, it is also stated: “The term ‘civil service,’ in its accepted sense, ‘includes all functions under the government except military functions. In general it is confined to functions in the great administrative departments of state. In its enlarged sense the term means all service rendered to and paid for by the state, or nation, or by political subdivisions thereof, other than that pertaining to naval or military affairs; all offices and positions of trust or employment in the service of the state or of such civil division or city, except offices and positions in the militia and the military departments.’ Corpus Juris, Vol. 11 p. 815.”
 

 It is true that the two acts, 171 of 1940 and 172 of 1940, are interrelated insofar as the appointment of two of the City Civil Service Commissioners is concerned, but this could not be considered a separate object, independent of civil service; in fact, the purpose of both acts is to establish civil service and to place State and City employees under a merit system of employment. The single purpose or object of the act, irrespective of the extent of its application to State or City employees, is to establish a civil service system. Only recently, in the case of Peck v. City of New Orleans, supra, we upheld an act involving voting machines. This act contained provisions applying to the State as a whole and to cities having a population in excess of a certain number of persons. The mere fact that the Legislature saw fit to deal with this subj ect matter, civil service, in separate acts would not create a dual purpose or aim.
 

 The provision permitting the employment' of independent counsel to enforce the act is a means adopted to carry out the law, and it is not necessary that
 
 *360
 
 such be mentioned in the title of the statute. This is also true with reference to the provision in the body of the act relative to the appointment of two of the three members of the City Civil Service Commission. This provision is merely a means adopted to carry out or extend the purpose, civil service, expressed in the title of the act.
 

 Plaintiff contends that Act 172 of 1940 is violative of the 14th Amendment of the Constitution of the United States in that it is arbitrary and discriminatory and does not afford him, and others similarly situated, the equal protection of the laws. Counsel for the plaintiff advances various grounds in respect to this contention, which we will recite and treat separately.
 

 Counsel takes the position that the act is violative of the 14th Amendment of the Federal Constitution in that it blankets in those employees occupying permanent positions on July 1, 1942 without requiring them to stand competitive tests, while all applicants for employment, after July 1, 1942, must subject themselves to competitive tests to secure employment. Section 11 of the Act provides that thirty days after July 1, 1942, all persons holding permanent positions are to be given non-competitive tests which are to be prescribed by the Director. These tests will determine the fitness of such persons to perform the duties required in the positions which they are holding. Those who are certified will remain in their positions, but those persons who are certified not to be qualified shall be dismissed from their positions within 30 days, or recommended 'for a position of a-lower rank for which they are qualified. In the case of State ex rel. Caire v. Board of Commissioners of Port of New Orleans, 174 La. 516, 141 So. 46, this court held that a provision in a civil service system permitting existing employees to be retained, upon passing a non-competitive examination, was legal. It has been held in other jurisdictions that provisions of this nature do not violate the 14th Amendment of the Constitution of the United States. State ex rel. Carnes v. Fosdick, 15 Ohio N. P., N.S., 337; State ex rel. Milwaukee County v. Buech, 171 Wis. 474, 177 N.W. 781.
 

 Counsel for the plaintiff takes the position that the act is violative of the 14th Amendment of the Federal Constitution in that the act does not extend to all persons in the public service, there being fourteen classes of exempted persons.
 

 Under the provisions of Section 10 of the Act, certain public officers and employees are placed in the unclassified service, thereby excluding them from the operation of the statute. Elected officials, officers and employees of the Legislature, persons in educational positions, members of the military and naval forces, judges, election officials, members of boards and commissions, and State officials and heads of departments, persons in confidential positions, such as principal, assistant or deputy, private secretaries for boards, heads of departments or commissions, and other special cases are placed in the unclassified service, thereby being exempted from the operation of the statute. It is no': the function of this court to charge the Legislature with making arbitrary or discriminatory classifications in the absence
 
 *362
 
 of clear manifestation that such was the case. Peck v. City of New Orleans, 199 La. 76, 5 So.2d 508, 518.
 

 The authorities cited by counsel, in support of his contention, are to the effect that class legislation permitted by the Constitution must possess two indispensable qualities; viz, (1) the law must be so framed as to extend to and embrace equally all persons who are or may be in like situations or circumstances, and (2) the classification must be natural and reasonable, not arbitrary and capricious. We find no fault in the principles enunciated, ■or the authorities cited by counsel in support of them. It does not appear that there is any dispute as to the law in this respect, but the whole question resolves itself as to whether or not the provision complained of complies with these principles of law.
 

 The Federal Civil Service Law and Civil Service Laws adopted in other states exempt certain persons from the application of such laws.
 

 “The scope of civil service laws is generally limited so as to exclude ■ from their operation certain classes of public officers and employees. Among those who are expressly exempted under various laws are judicial officers, officers elected by the people or by the city council, etc. Moreover the civil service laws generally recognize the appropriateness of exempting positions of a confidential nature.” 10 American Jurisprudence, Section 13, Page 934.
 

 In the case of State ex rel. Buell v. Frear, 146 Wis. 291, 131 N.W. 832, 833, 34 L.R.A.,N.S., 480, 487, 490 the Wisconsin Supreme Court stated: “The act is assailed by the respondent upon the ground that it abridges the privileges and immunities of the citizens of the state, in that it creates arbitrary and unlawful discriminations between different classes of citizens as regards the right to enter upon and continue in the public service. This contention seems to be founded on the idea that any citizen is guaranteed the unqualified right to enter the public service, regardless of his skill and fitness for the service. The privilege of holding a public office is not in its nature of the class of rights which are guaranteed by the Constitution as the natural and inalienable rights of every citizen. It has never been treated as a natural right in our governmental system. It is in its nature a privilege which is extended to the citizens of the state upon such conditions and terms as the people in their sovereign capacity may determine. * * * It is contended that the commission are granted arbitrary power to i extend the exempt class. We do not so regard it. They must include only these offices in this class, as to which they in fact find that competitive or noncompetitive examinations are impracticable on account of the temporary duration of the employment or for other special reasons. The phrase, ‘for special reasons satisfactory to the commission,’ means that the commission are to investigate, and, when they find as a matter of fact that the merit and fitness of persons to perform the duty of such offices cannot be ascertained by an examination, then they are to place such offices in the exempt
 
 *364
 
 class. As to all other positions in the classified service the commission must enforce the tests prescribed by the law to ascertain the qualifications of applicants.”
 

 In the case of State ex rel. Dunn v. Fosdick, 21 Ohio N.P., N.S., 187, the court said: “The placing of certain positions in the classified service or in the unclassified service, or employees being protected1 by the civil service law, or not being protected by the civil service law, is a legislative function, and the Legislature in this case exercised that legislative function by prescribing under what conditions an employee shall be considered as being protected by the civil service law, or shall not be considered as being protected by the civil service law. The language of the Legislature lays down the qualifications essential for the holding of a position in the classified service, and this certainly the Legislature may do.”
 

 The exemption of certain classes of persons from the operation of civil service has been placed by almost all of the Legislatures of this country upon the theory that laws in relation to the holding of public office are not enacted for the benefit of those employed or those to be employed, but for the benefit of the public. The privilege of holding public office is not guaranteed by the Constitution as an inalienable right. On the contrary, the privilege is conferred only upon such terms and conditions, as the people, speaking through their chosen representatives, might determine. The equal protection clause of the Constitution does not prohibit each and every discrimination in the law, but only such as would be arbitrary and without reason. We are not prepared to say that the exemptions are arbitrary or without reason.
 

 Counsel for the plaintiff contends that the act is unconstitutional in that it gives a preference to individuals over twenty-one years of age.
 

 In answering this contention, we may concede that the act gives those over twenty-one years of age a preference in employment. In the case of State v. Caldwell, 170 La. 851, 129 So. 368, it was held that a statute prohibiting employment of mechanics who were not qualified voters in the construction of public works was not violative of the 14th Amendment of the Federal Constitution. The case was appealed to the Supreme Court of the United States, and the appeal was dismissed for the want of a substantial federal question. See, Caldwell v. State of Louisiana, 282 U.S. 801, 51 S.Ct. 40, 75 L.Ed. 720.
 

 Counsel for the plaintiff contends that the act is violative of the 14th Amendment of the Federal Constitution in that it gives a preference to all persons honorably discharged, or discharged under honorable conditions, from the U. S. Army, Navy, Marine Corps, or Coast Guard Service or the widows of such persons. Under Section 24(g) of the Act, veterans, honorably discharged, and the widows of such veterans, who have met the minimum requirements imposed for each test, and who have received at least the average rating required for eligibility, are given an additional five points to be added to their earned gradings. Veterans honorably dis
 
 *366
 
 charged, who are suffering from service connected disability, and their widows, are given ten points to be added to their earned gradings. Under our statute the preferment is granted only after the veterans or their widows have passed the required examination. Veterans and their widows are given preferment in employment under the Federal Civil Service Law and under the Civil Service Laws of many of the states. Statutes giving such preferences have been upheld in many of the states and by the Supreme Court of the United States. It appears to be fairly well settled that civil service statutes giving preference to veterans and their widows, when they have stood the required tests and otherwise complied with the law, are not violative of the Federal Constitution.
 

 We find a well. considered statement touching this question based on the jurisprudence of this country in 10 American Jurisprudence, Sec. 9, Page 927, which reads as follows:
 

 “Appointment and Employment of Veterans — Most of the civil service acts have sought to favor honorably discharged soldiers and sailors in the matter of appointments. This has been attempted in two ways: (1) By exempting such veterans entirely from taking examination, and (2) by preferring them in the making of appointments after they have passed the examination and been placed on the eligible list. The first method has very generally been declared unconstitutional. It is inconsistent with the nature of our government, and particularly with those provisions of the Constitution denying special privilege to any one class, that the appointing power should be compelled by legislation to appoint to public office persons of a certain class, in preference to all others, without the exercise on its part of any discretion, and without the favorable judgment of some legally constituted officer or board as to whether such persons are actually qualified to perform the duties of the office. On the other hand, the courts are generally agreed that as between persons equally qualified to perform the duties of an office, a lawful preference may be given to veterans, and statutes providing that veterans who pass the civil service examinations . shall, be preferred in appointment have generally been upheld, in the absence of any express or implied limitation in the local Constitution. Neither the court nor legislature can add to the preferences fixed by the Constitution. If, for example, the Constitution should provide for a preference to veterans of the Civil War, the legislature would be without power to confer a preference upon veterans of other wars.
 

 “A constitutional provision requiring that preference in appointment and promotion given to honorably discharged soldiers and sailors without regard to their stañding on any list does not exempt veterans from examinations ; such preference becomes operative only when, as a result of examinations, they are placed upon a list from which appointments and promotions can be made.
 

 “Ordinarily, the language of the statute determines the character of the military or naval service or connection necessary to entitle one to a preference. The view has been taken that such statutes should be strictly construed.
 

 
 *368
 
 “Congress has provided for a preference to persons who have been honorably discharged from the military or naval service in appointments to the Federal Civil Service-The preference granted by this act is to be exercised as between those who are equally qualified; the appointment of those who are incompetent or inefficient is not authorized thereby.”
 

 It is not necessary for us to review all the cases touching this question, but we feel that it is sufficient to state that the validity of a preference for veterans and their widows, such as we find in Act 172 of 1940, has been held not to be violative of the Federal Constitution in the case of Vincent J. Gianatasio v. Abraham Kaplan, 257 N.Y. 531, 178 N.E. 782. An appeal was dismissed in this case by the Supreme Court of the United States for the want of a substantial federal question. See Vincent J. Gianatasio v. Abraham Kaplan, 284 U.S. 595, 52 S.Ct. 203, 76 L.Ed. 512.
 

 The only case cited by counsel for the plaintiff is Barthelmess v. Cukor, 231 N.Y. 435, 132 N.E. 140, 16 A.L.R. 1404, which is not applicable. The decision in that case was based on a particular provision in the Constitution of New York as it existed at the time the decision was rendered. Subsequently, the New York Constitution was amended, and the Supreme Court of New York upheld the validity of a preference for veterans, such as we find in our act, on the ground that it did not violate the Federal Constitution. Vincent J. Gianatasio v. Abraham Kaplan, supra.
 

 The plaintiff contends that Act 172 of 1940 deprives constitutional officers of their legal right to make personnel appointments, and thereby prevents elected officials from exercising discretion in selecting their subordinates, in violation of the intention and spirit of the Constitution of Louisiana. Counsel for the plaintiff cites no authority to support this contention. An act of the Legislature cannot be declared void because it is opposed to the spirit supposed to pervade the Constitution, for the reason that it is now generally recognized that courts cannot annul an act of the Legislature on any other ground than repugnance to the Constitution. Ward v. Leche, supra.
 

 We have been unable to find any decision of this court passing on the question of whether or not a constitutional officer has a constitutional right to select his employees. However, it has been held in other states that state officers have no such constitutional right. The theory upon which these decisions are based is to the effect that the duties of an officer are those imposed by law, and the employees who assist him are not his employees, but the employees of the state. The employees are in public service and not private service, and the state, and not the officer, employs them and pays them. In other words, the officer does not have the vested or private personal right to select his subordinates. People v. McCullough, 254 Ill. 9, 98 N.E. 156, Ann.Cas. 1913B, 995; People v. Loeffler, 175 Ill. 585, 51 N.E. 785; People v. Capp, 61 Colo. 396, 158 P. 143; Stowe v. Ryan, 135 Or. 371, 296 P. 857.
 

 If we were to concede that an officer has a constitutional right to select his subordinates, the act does not deprive him
 
 *370
 
 •of this right. It merely restricts the right •of selection, by requiring the officer to make his selection from three applicants on the certified eligible list, who, after having taken competitive examinations, are found to be the best qualified to perform the required service. In our opinion, this would not be an unreasonable restriction on the exercise of the discretion of the appointing •officer in the selection of his subordinates.
 

 The plaintiff contends that the act violates the 14th Amendment of the Federal Constitution in that it denies persons receiving the highest percentage in examinations priority to appointment. The findings in the case of Hope v. City of New Orleans, supra, answer this contention. In that case, the act required the appointing officer to •select any applicant who had obtained a .•grade of 70% or better in the civil service examination. It was unsuccessfully contended therein that the provision was unequal in its operation and denied priority of right of appointment to persons receiving the highest grade in violation of the 14th -Amendment of the Federal Constitution.
 

 The plaintiff contends that Par•agraph 9 of Section 6 of Act 172 of 1940, • empowering the State Civil Service Commission to select and appoint two comrmissioners of the City Civil Service Commission, created by Act 171 of 1940, is null and void and unconstitutional because it destroys local self-government, as provided for in Section 22 of Article XIV of ■the Constitution.
 

 The plaintiff is neither a taxpayer nor •resident of the City of New Orleans and ■would have no right to complain, since he is not affected by this provision of the statute. In the case of Peck v. City of New Orleans, supra, wherein it was contended that a certain provision of a statute which applied to the City of New Orleans was illegal, it was held that a taxpayer residing in another part of the State, who was neither a taxpayer nor resident of the City of New Orleans, had no right to complain as to any action which the City might take in complying with its obligation imposed by the statute.
 

 Plaintiff contends that Section 42 (e) which prohibits any employee in the classified service from being a member of any national, state or local committee of a political party, or an officer or member of a committee of any factional, political club or organization, or a candidate for nomination or election to any public office, and which prohibits any employee in the classified service from making any political speech or public political statement as a part of any political campaign is unconstitutional and is in violation of Section 3 of Article I of our State Constitution, granting freedom of speech, and the 14th Amendment of the Federal Constitution which prohibits any state from making or enforcing any law which shall abridge the privileges of the citizens of the United States.
 

 The only case cited by counsel in support of his contention is Bridges v. State of California, 314 U.S. 252, 62 S.Ct. 190, 86 L.Ed. -, decided on December 8, 1941. The cited case is not applicable. We find that civil service laws of other states and the Federal Civil Service Law contain
 
 *372
 
 similar provisions to insure the immunity of civil service from political control.
 

 In the case of Ex parte Curtis, 106 U.S. 371, 1 S.Ct. 381, 384, 27 L.Ed 232, the Supreme Court of the United States upheld the validity of a federal statute prohibiting certain federal employees from requesting, giving to or receiving from any other officer or employee any money or property or other thing of value for political purposes, stating, “the evident purpose of congress in all of this class of enactments has been to promote efficiency and integrity in the discharge of official duties, and to maintain proper discipline in the public service.” The court further stated: “No one can for a moment doubt that in both these statutes the object was to protect the classes of officials and employes provided for from being compelled to make contributions for such purposes through fear of dismissal if they refused.”
 

 In the case of McAuliffe v. New Bedford, 155 Mass. 216, 29 N.E. 517, the following pertinent statement was made: “The petitioner may have a constitutional right to talk politics, but he has no constitutional right to be a policeman. There are few employments for hire in which the servant does not agree to suspend his constitutional rights of free speech as well as idleness by the implied terms of his contract. The servant cannot complain, as he takes the employment on the terms which are offered him.”
 

 It is within the legislative discretion to adopt such means as will effectuate the purpose of the act, and it is within its discretion to prohibit the participation in political activities on the part of State employees, if it would, in its opinion, bring about a more perfect civil service system.
 

 The Federal Congress passed the Federal Corrupt Practices Act and the Hatch Act to prevent certain political activities which Congress deemed pernicious.
 

 In the case of Burroughs v. United States, 1934, 290 U.S. 534, 547, 54 S.Ct. 287, 78 L.Ed. 484, the court stated: “Choice of means of protecting election of President and Vice President from corruption presents question primarily addressed to judgment of Congress, and, if means adopted are really calculated to attain such end, extent to which they conduce thereto, degree of their necessity, closeness of relationship between means adopted, and end desired, are matters for congressional determination.”
 

 It would appear that the provisions in the act prohibiting political activity on the part of State employees is a legitimate exercise of legislative discretion and not violative of the Constitutional provisions.
 

 Plaintiff contends that Section 44, providing for the employment of independent counsel, is violative of Section 56 of Article VII of the Constitution, this section stipulating that the Attorney General and his assistants should have charge of all legal matters in which the State has an interest, and that any sum paid to independent counsel under the provisions of Section 44 of Act 172 of 1940 out of the appropriation stipulated and provided for in Item 55 of Section 2 of Act 44 of 1940 would be violative of Sections 1, 8, 9 and 10 of Article IV of the Constitution.
 

 
 *374
 
 Section 44 of the Act reads as follows: “Legal Services. If this Act or its enforcement by the Director or the Commission shall be called into question in any judicial proceeding, if any person shall fail or refuse to comply with the lawful orders or directions of the Commission, such Commission or the Director may call upon the Attorney General or may, with the advice and consent of the Governor, employ independent counsel to represent it in sustaining this Act and the enforcement thereof and such independent counsel shall be paid as other employees of the Department are paid.”
 

 Section 56 of Article VII of the Constitution provides: “The Attorney General and the assistants shall be learned in the law and shall have actually resided and practiced law, as duly licensed attorneys, in the State for at least five years preceding their election and appointment. They, or one of them, shall attend to, and have charge of all legal matters in which the State has an interest, or to which the State is a party, with power and authority to institute and prosecute or to intervene in any and all suits or other proceedings, civil or criminal, as they may deem necessary for the assertion or protection of the rights and interests of the State. They shall exercise supervision over the several district attorneys throughout the State, and perform all other duties imposed by law”.
 

 We do not construe Section 56 of Article VII of the Constitution to be exclusive in its nature or a limitation on the Legislature. From a mere reading of the constitutional provision, it is apparent that the framers of the Constitution never intended the provision to operate as a limitation upon the Legislature to prohibit it from passing any act, calling for the employment of counsel where it deemed such was necessary. However, if our opinion were otherwise, Saint v. Allen, 172 La. 350, 134 So. 246, would answer this contention.
 

 The plaintiff contends that Sections 45 (a) and (b) of Act 172 of 1940 violate Article 1, Section 12, as amended, of the State Constitution and the 8th Amendment of the Federal Constitution, which provide that excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted. He also claims that these sections of the act violate Sections 1 and 2 of Article II of the State Constitution, relative to -the distribution of the powers of the Government in three distinct departments; he further contends that these sections of the act also violate Section 4 of Article IV of the State Constitution which prohibits the passage of any special law concerning civil and criminal actions. .
 

 Sections 45 (a) and (b) of Act 172 of 1940 read as follows:
 

 “Penalties, (a) Any person who wilfully violates any provision of this Act or of the rules shall be guilty of a misdemeanor, and shall upon conviction be punished by a fine of not less than One Hundred ($100.-00) Dollars, nor more than Ten Thousand ($10,000.00) Dollars, or by imprisonment for a term of not less than one month nor more than twenty-four (24) months, or both such fine and such imprisonment.
 

 
 *376
 
 “(b) Any person who is convicted of a misdemeanor under this Act shall, for a period of ten (10) years, be ineligible for appointment to or employment in a position in the State service, and if he is an officer or employee of the State, shall forfeit his office or position.”
 

 The plaintiff, in this case, has not been charged with the violation of any provision of the act or any rule of the Civil Service Commission. He, is attacking the act as a citizen and taxpayer. He does not claim that he comes within the class of persons affected by these particular provisions of the statute.
 

 In our opinion, the plaintiff has no right to attack the constitutionality of these provisions of the statute, unless their invalidity, if such were determined to be the case, would have the effect of nullifying the statute as a whole. It is well settled that the unconstitutionality of part of a statute does not invalidate the whole. A statute may contain unconstitutional provisions and other provisions that are not obnoxious to the Constitution. If, for instance, the unconstitutional portion is stricken out, and that which remains is complete in itself and is capable of being executed in accordance with the legislative intent, wholly independent of that which was rejected, the statute must be sustained. Cooley, Constitutional Limitations, 178; Moore v. City of New Orleans, 32 La.Ann. 726; Parish of St. Landry ex rel. Fontenot v. Stout, 32 La. Ann. 1278, 1279; State ex rel. Woodward v. Chapman, 35 La.Ann. 75, 76; Watson v. McGrath, 111 La. 1097, 1098, 36 So. 204; State ex rel. F. H. Florance v. A. H. Isaacson, 32 La.Ann. 1306.
 

 The following pertinent statement was made in the case of State v. Standard Oil Co. of Louisiana, 188 La. 978, 1010, 178 So. 601, 611: “‘It is a firmly established principle of law that the constitutionality of a statute may not be attacked by one whose rights are not affected by the operation of the statute. This rule applies to all cases both at law and in equity, and is equally applicable in both civil and criminal proceedings. A constitutional question may not be raised by one whose rights are not directly and certainly affected, nor in a case where no attempt is being made to enforce the provision attacked. In other words, one attacking the constitutionality of a statute must show that it affects him injuriously and actually deprives him of a constitutional right. It is-not sufficient that the statute is unconstitutional as to other persons or classes of persons; it must affirmatively appear that the person attacking the statute comes within the class of persons affected by it.. * * * ’ 12 C.J. 760 et seq. See, also, City of New Orleans v. Dameron et al., 149 La. 535, 541, 89 So. 685; State v. Thrift Oil & Gas Co. 162 La. 165, 110 So. 188, 51 A.L.R. 261; Bruning v. City of New Orleans, 165 La. 511, 115 So. 733; Vander Sluys v. Finfrock, 158 La. 175, 183, 103 So. 730; Brown-Forman Co. v. Commonwealth of Kentucky, 217 U.S. 563, 30 S.Ct. 578, 54 L.Ed. 883; Straus v. Foxworth, 231 U.S. 162, 34 S.Ct. 42, 58 L.Ed. 168.”
 

 It is provided in Section 47 of the State-Civil Service Law for separability as fol
 
 *378
 
 lows: “Section 47. Separability. If any provision of this Act or of any rule, regulation or order thereunder or the application of such provision to any person or circumstance shall be held invalid, the remainder of this Act, and the application of such provision to this Act or of such rule, regulation or order to persons or circumstances other than those as to which it is held invalid shall not be affected thereby.”
 

 If the sections complained of were stricken out, the statute would still be workable, and the legislative intent to create a Civil Service Commission would be carried out.
 

 Since we have concluded that even in event the sections complained of were stricken out, it would not have the effect of nullifying the statute as a whole, the plaintiff, who does not complain to be affected by these particular provisions otherwise, could have no interest in attacking their validity.
 

 The plaintiff contends that Act 172 of 1940 is unconstitutional for the reason that Section 48 of the Act is violative of Section 27 of Article III of the Constitution, as amended.
 

 Section 48 of the Act reads as follows: “Section 48. Effective Dates. Sections 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 12, 13, 16, 35, 37, 39, 41, 44, 45, 46, and 47 shall become effective immediately upon the adoption of this Act. All of the remaining Sections of this Act, shall become effective on the first day of July, 1942; provided, that the director, prior to July 1, 1942, may prepare and secure approval of the pay plan, may announce and hold tests and prepare to establish employment lists, and may take any" other action that he may deem necessary and proper, to provide for giving full effect, so far as may be, to all the provisions of this Act on the date specified; and provided further, that the Director may accept the results of any previous tests meeting Federal standards established under the Social Security Act, as equivalent to the qualifying examinations required by this Act, and may accept and continue as though provided under the provisions of this Act registers, resulting in either case from action under authority of any provision of law for a merit system of personnel administration applicable to one or more departments or other agencies of the State, meeting Federal standards established under the Social Security Act.”
 

 Section 27 of Article III of the Constitution reads as follows: “§ 27 [As amended by Act 70 of 1936]. All laws enacted shall go into effect at twelve o’clock, noon, on the twentieth day after the Legislature shall have adjourned. This provision shall not apply to the general appropriation Act or the Act • appropriating money for the expenses of the Legislature, or to any Act the necessity for the immediate passage of which shall have been certified to the Legislature by the Governor, or the acting Governor, while the Legislature is in session, and any such Act so certified shall become effective immediately upon approval by the Governor. All Acts shall be published in the official journal without delay after passage.”
 

 The position is taken that the provision in Section 48 of the Act, providing that
 
 *380
 
 certain sections shall become effective immediately upon the adoption of the act,' is violative of the constitutional provision requiring that all laws shall go into effect on the twentieth day after the Legislature shall have adjourned. The answer to this contention is, even if the Legislature did not have the authority to provide that these sections of the act should take effect immediately, then, in that event, they would become effective at the time specified in the Constitution; viz, twelve o’clock, noon, twenty days after the adjournment of the Legislature.
 

 The further position is taken that the Legislature was without authority to provide that certain remaining sections of the act should become effective on the first day of July, 1942, or at any time other than that fixed by the constitutional provision; viz, twelve o’clock, noon, twenty days after the Legislature has adjourned. Counsel for the plaintiff has not favored us with any authority to the effect that the Legislature could not provide for an act to become effective at a period of time in excess of twenty days from adjournment of the Legislature. While we have been unable to find any decision of this court, passing on this question, it has been passed upon by courts of other States. The reasoning in. the case of State ex rel. New Mexico State Bank v. Montoya, 22 N.M. 215, 160 P. 359, 362, is peculiarly applicable: “We therefore hold that the constitutional limitation appearing in section 23 of article 4 of the Constitution, providing that laws shall go into effect 90 days after the adjournment of the Legislature enacting them, except general appropriation laws which shall go into effect immediately upon their passage and approval, is a limitation upon the right of the Legislature to provide a shorter period than 90 days within which laws shall become effective, and does not preclude the Legislature from fixing a longer period than 90 days after the adjournment of the Legislature, when legislative enactments shall become effective.”
 

 In the same case, State ex rel. New Mexico State Bank v. Montoya, supra, the court quoted the following from Price v. Hopkin et al., 13 Mich. 318: “The purpose of this provision undoubtedly was to give the people time and opportunity to learn what changes were to be made in the law before those changes should' come into operation, and some countenance is therefore afforded to the position of defendants that the law becomes notice from its passage, notwithstanding it has not yet taken effect. But the idea embodied in this constitutional provision is, not that the passage of the law is notice, but that 90 days from the end of the session are required to bring knowledge of the law to the public at large. * * * And when the Legislature, for reasons satisfactory to them, decide to postpone the period for the statute to come into operation to a later period, it is to be presumed, nothing appearing to the contrary, that in the .particular case it was deemed important that more time be allowed for citizens to ascertain the proposed changes, and to become acquainted with their bearings. The time thus allowed is the reasonable time fixed by the Legislature to bring knowledge of the
 
 *382
 
 law home to parties interested, before they are required to govern their actions by it.”
 

 The New Mexico Supreme Court in commenting upon the cases of Price v. Hopkin et al., supra, and State ex rel. Cummings v. Trewhitt, 113 Tenn. 561, 82 S.W. 480, from which it had quoted, stated: “The reasoning of the two cases referred to would clearly show the intent of the framers of the' Constitution in adopting the limitation as contained in section 23 of article 4, and we cannot consider this provision as otherwise than a limitation upon the time within which laws can be made effective, and it would clearly appear that, if the Legislature in its wisdom conceived that public interest was best to be served by providing for a longer period then 90 days after the adjournment of the Legislature within which their enactments should become effective, suph would be in harmony with the spirit and purpose of the Constitution and should not be interfered with by a strict interpretation of said section 23.”
 

 Under Article 42 of the Constitution of 1898, laws did not take effect until promulgated, and they were considered promulgated at the place where the State Journal was published, the day after their publication in the State Journal, and in all other parts of the State twenty days after such publication. Under Article 42 of the Constitution of 1913, laws did not take effect until promulgated, and they wére not considered promulgated until ten days after publication in the State Journal. The Constitution of 1921, Section 27 of Article III, fixed a definite and uniform date as to when laws were to become effective, viz, twelve o’clock, noon, twenty days after the Legislature had adjourned.
 

 From a mere reading of the provisions in the prior Constitutions and that contained in our present Constitution, it is apparent that it was the intention of their framers to prevent a law from being imposed upon the public without giving it ample time to become acquainted with its terms and an opportunity to comply therewith. The purpose of provisions of this nature is to secure sufficient interval between the time- of passage of an act and its going into effect, to enable the public to become acquainted with its terms and to conform thereto. Cooley, Constitutional Limitations — Margin, p. 156, Sammis v. Bennett, 32 Fla. 458, 14 So. 90, 22 L.R.A. 48.
 

 It is a familiar doctrine, that the Legislature of a State, unlike Congress, which cannot do anything which the Federal Constitution does not authorize, may do everything which the State Constitution does not prohibit. Hughes v. Murdock, 45 La.Ann. 935, 13 So. 182; State v. Grosjean, 182 La. 298, 161 So. 871.
 

 We do not interpret the words, “all laws enacted shall go into effect at twelve o’clock, noon, on the twentieth day after the Legislature shall have adjourned,” as prohibiting the Legislature from fixing a date on which an act shall become effective beyond this period of time. We know of no provision in the Constitution which specifically prohibits the Legislature from fixing the effective date of an act beyond twenty days after the Legislature has adjourned.
 

 
 *384
 
 The plaintiff contends that Act 172 of 1940 is violative of Section 27 of Article III of the Constitution, as amended, in that the Legislature is without authority to designate different dates for different sections of the act to become operative. The position is taken that an act cannot become operative in sections and fragments but must become effective as an entirety. We know of no decision of this court, passing on this question, and none has been cited. The question has been entertained by courts in other states. In the absence of a constitutional provision to the contrary, the Legislature may direct that different sections of an act shall go into effect at one time, and other parts shall become effective at different times expressed in the act. 59 C.J. Sec. 689, State ex rel Otto v. Kansas City, 310 Mo. 542, 276 S.W. 389; State ex rel Wheeler v. Stuht, 52 Neb. 209, 71 N.W. 941.
 

 It cannot be disputed that the .Legislature has the authority, in the absence of any constitutional prohibition, to fix a date when certain sections of an act are to become operative and another or different date when the remaining sections shall become operative. The constitutional provision relied on is merely a limitation upon the Legislature, prohibiting it from fixing a date for a law to become operative at any period of time less than 20 days after its adjournment. The Legislature is at liberty to fix the effective date of an act at any time beyond this period of time, or it could fix different dates beyond this period of time, 20 days after its adjournment, for different sections of an act to become effective. We know of no provision in our Constitution prohibiting the Legislature from so doing.
 

 The plaintiff contends that Item 55 of Section 2 of Act 44 of 1940, the General Appropriation Act, is unconstitutional. Item 55 of Section 2 of Act 44 of 1940 reads as follows:
 

 “State Civil Service Commission and Department of Civil Service (as provided in House Bills 481, 482, 483, and 484 of 1940) No. 55. 1940-41 1941-42 General Fund......$40,000.00 $70,000.00”
 

 The plaintiff attacks the appropriation on various grounds; viz, (1) That any appropriation of funds for expenditure under H. B. 481 or Act 171 of 1940, the City Civil Service Law, is violative of Section 1 of Article IV of the Constitution which provides, “nor shall any appropriation of money be made for a longer term than two years;” (2) That any appropriation for the benefit of the City Civil Service Law is violative of Section 8 of Article IV of the Constitution which provides, “no appropriation from the State treasury shall be made for private, charitable or benevolent purposes to any person or community;” (3) That any appropriation made under H. B. 482 is null and ineffectual because this bill was never acted upon by the Legislature; (4) That House Bill 483, which later became Act 381 of 1940, a constitutional amendment to Section 15 of Article XIV of the Constitution, adopted November 5, 1940, required no funds for administration, and any appropriation made therefor is void and ineffectual as it applies to H. B. 483 or Act 381 of 1940; and (5) That House Bill 484 became Act 172 of 1940,
 
 *386
 
 the State Civil Service Law, and any appropriation insofar as it applies to this House Bill or act is unconstitutional for the reason that it would be violative of (a) that portion of Article IV, Section 1 of the Constitution which provides “no money shall be drawn from the treasury except in pursuance of specific appropriation made by law;” (2) that portion of Article IV, Section 9 of the Constitution, which provides that “the general appropriation bill shall embrace nothing but appropriations for the ordinary expenses of the government * * * and such bill shall be so itemized as to show for what account each and every appropriation shall be made;” and (3) that portion of Article IV, Section 10, which says that “each appropriation shall be for a specific purpose, and for a specific amount.”'
 

 House Bill 481 was later passed as Act 171 of 1940, the City Civil Service Law, •which does not become effective until July 1, 1942, the day after the appropriation would expire. House Bill 482 was a joint resolution which was never acted upon by the Legislature. House Bill 483 was later passed as Act 381 of 1940, which was subsequently adopted as an amendment to Section 15 of Article XIV of the Constitution. There would be no necessity to use any of the funds allocated to this appropriation insofar as these House Bills are concerned. The first of these bills becomes the City Civil Service Law after the expiration of the appropriation; the second bill was never acted upon, and the third, being a constitutional amendment, required no expenditure of funds from this appropriation. The only reason the Legislature could have had for listing these bills in Item 55 of Section 2 of Act 44 of 1940 would have been that, at that time, before the passage of the bills, it could not foresee whether or not they’would contain provisions connecting and interrelating them with the State Civil Service Act. It therefore desired' to protect the appropriation against this contingency. These bills might have been listed in this Item through inadvertence. Irrespective of the reason why these bills were listed in the Item, there is nothing in this record to show that any of the funds were expended, or that there was an attempt to expend them thereunder. The only other House Bill mentioned in Item 55 is House Bill 484, which was later passed as Act 172 of 1940, the State Civil Service Law. Insofar as Act -172 of 1940 is concerned, the appropriation for “State Civil Service Commission and Department of Civil Service” is specific. The mere listing of the other three' House Bills, through inadvertence or otherwise, would not, in our opinion, invalidate the appropriation.
 

 The plaintiff’s first two contentions are predicated on the ground that funds are illegally appropriated to the City of New Orleans. No part of the appropriation could have inured to the benefit of the City of New Orleans for the reason that the City Civil Service Law does not become operative until July 1, 1942, at which time the appropriation will have expired. The evidence shows that all of the funds appropriated for 1940 and 1941 have been consumed and a large part of the funds provided for 1941-42 have also been ex
 
 *388
 
 pended. The evidence also shows that there has been no attempt made to use any of the funds by the City of New Orleans or anyone else for the administration of the City Civil Service Law. We see no merit in these contentions.
 

 The plaintiff’s third contention is without merit because House Bill 482 never became a law and therefore no funds were required for its administration.
 

 Plaintiff’s fourth contention is without merit because House Bill 483 is now a constitutional amendment which would require no expenditure of these funds.
 

 Plaintiff’s fifth and last contention is to the effect that the appropriation is not specific insofar as it applies to House Bill 484, which later became Act 172 of 1940, the State Civil Service Law. The provision in Item 55 “State Civil Service Commission and Department of Civil Service” is specific, and the mere fact that the provision, “as provided in House Bills 481, .482, 483 and 484 of 1940,” happens to contain three House- Bills, listed therein, through inadvertence or otherwise, which require no expenditure of funds, would not nullify the other specific provisions contained therein.
 

 We therefore conclude that the listing of the three House Bills, 481, 482, and 483, which require no expenditure of the funds appropriated under Item 55, would not nullify the appropriation, specifically allocating funds, for the administration of the “State Civil Service Commission and Department of Civil Service,” created under Act 172 of 1940, the State Civil Service Law.
 

 The plaintiff contends that Act 381 of 1940, a proposed constitutional amendment, purportedly adopted on November 5, 1940, relating to the establishment of a Civil Service System in the State and in cities of the State of a certain population, is unconstitutional for the reason that it is plural in form, nature and substance, and was not submitted to the electors in accordance with the mandatory provisions of Article XXI of the State Constitution.
 

 The amendment complained of, which is now Section 15 of Article XIV of the Constitution reads as follows:
 

 “Section 15 (a). The Legislature shall provide for civil service in municipalities having a population of one hundred thousand (100,000) or more, and for the recognition and adoption of the merit “system in the employment or appointment of all applicants; and shall provide against the discharge of employees or appointees without good and sufficient cause.
 

 “(b). The ‘State Civil Service Law’ adopted by the Legislature at the Regular Session of 1940 and providing a civil service system for the State, and the ‘City Civil Service Law’ adopted by the Legislature at the Regular Session of 1940 and providing a civil service system for all cities of the State of Louisiana having a population exceeding one hundred thousand (100,000) according to the last preceding census of the United States for which the official figures have been published, are hereby ratified, approved and affirmed. Any bill or bills amending or repealing either of said acts in whole or in part, directly or by implication, may be passed and become
 
 *390
 
 laws only when adopted by a two-thirds vote of the members elected in each House of the Legislature of the State of Louisiana.
 

 “Section 2. That said proposed amendment be so submitted to said electors at the next election for Representatives in Congress, to be held in Louisiana on the first Tuesday next following the first Monday of November, 1940.”
 

 On pages 60 and 61 of the plaintiff’s brief, we find the following statement: “It was not necessary to amend the Constitution in order to enact Civil Service Laws for the State and for the City of New Orleans. Article XIV, Section 15 of the 1921 Constitution specifically authorized the Legislature to enact a civil service system in municipalities having a population of 100,000 or more, meaning New Orleans only, while no limitation or restriction is embodied in our 'organic law that would prevent the passage of a state civil service statute. It necessarily follows that Act 381 of 1940 was proposed and submitted to the electorate, not for authority to pass Acts 171 and 172 of 1940, but for other reasons. These two statutes are not enabling acts. These two statutes were not passed, to carry Act 381 of 1940 into effect.”
 

 Having arrived at the conclusion that Act 172 of 1940, the State Civil Service Law, did not transcend the Constitution, as contended by the plaintiff, and having arrived at the further conclusion, that the appropriation under Item 55 of Section 2 of Act 44 of 1940 was valid, there can be no necessity for us to consider the plain-' tiff’s attack on Act 381 of 1940, which subsequently became a constitutional amendment. It was not necessary to amend the Constitution to authorize the Legislature to enact the State Civil Service Law, for the reason that our Constitution contains no restriction in this respect. The plaintiff concedes that the Legislature had authority- to enact the State Civil Service Law, Act 172 of 1940. If we had found any constitutional defects in Act 172 of 1940, it would have been necessary to pass on this constitutional amendment in order to ascertain whether or not the amendment could be construed as having the effect of curing these defects. However, since we have decided that the act meets the other constitutional requirements, no purpose could be gained by entertaining the plaintiff’s attack on Act 381, for- the reason that any ruling in respect thereto would not change the results in this case.
 

 For the reasons assigned, the judgment is affirmed.
 

 O’NIELL, C. J., concurs in the decree.