ELLIS, Judge.
This is an appeal by Mrs. Mary Evelyn Parker, Commissioner of Welfare, from a decision of the State Civil Service Commission in an investigation by public hearing as a result of a charge by Mrs. Lité B. Bienvenu that she had failed to obtain an appointment as Director of the St. Martin Parish Department of Public Welfare through political pressure applied to the appointing authority. Subsequent to an investigation of the charge by the Director of the Department of Civil Service, the Civil Service Commission ordered a public hearing pursuant to the provisions of Article XIV, Section 15, (O) (4) of the Louisiana Constitution, Sections 2.9 C of the Civil Service Rules, which hearing was held in Baton Rouge on February 20th, 1963 at which time documentary evidence, sworn testimony of a number of witnesses including the complainant was heard, which resulted in an order by the members of the Civil Service Commission with one commissioner dissenting as follows:
“Having found as we have that the complainant was, through the constitutionally prohibited use of political influence, deprived of employment in the Classified Service of the State of Louisiana, IT IS ORDERED that Mrs. Lité B. Bienvenu be recognized as having been duly appointed to the position of Public Welfare Director II for St. Martin Parish, and, effective immediately upon the finality of this order, subject to all pertinent rules and regulations governing such appointment and position, that she enter into the performance of the duties of such office.’’
 Bearing in mind that the findings of fact of the Commission are final and may not be disturbed if there is substantial evidence in support thereof, LSA-Constitution Article XIV, Sec. 15(0) (1), Cunningham v. Caddo-Shreveport Health Unit, State Department of Health, La.App., 141 So.2d 142 (1st cir.) and the cases cited therein, we have carefully considered all the evidence in the record and find that the-findings of fact of the Commission are not only substantially, but fully, supported by the evidence. We herewith adopt said findings of fact which are as follows:
“1. For a period of approximately eighteen (18) months prior to the hearing in, Baton Rouge, the office of Public Welfare Director II in St. Martin Parish had been, vacant.
“2. Mrs. Lité Bienvenu had, some time-during or prior to the existence of the said, vacancy, established her eligibility for employment in this class.
“3. On at least two (2) occasions the-name of Mrs. Bienvenu appeared on a list of eligibles submitted to the Department of Public Welfare for possible employment;, on the first occasion the list contained four (4) names, Mrs. Bienvenu’s name being the fourth one listed. On the second occasion,, the list contained but two (2) names and Mrs. Bienvenu’s name was the second of these.
“4. On the second occasion referred to,. Mrs. Bienvenu was duly interviewed several-times by appropriate personnel in the Department of Public Welfare in Baton' Rouge, and finding her acceptable for employment to fill the St. Martin Parish vacancy, it was agreed between Mrs. Bienvenu- and the Department that she would report for duty in the St. Martin Parish office on, November 26, 1962.
“5. Following this agreement, Mrs., Bienvenu was requested by the Department', to say nothing to anyone other than her husband about her employment for the-reason that the Commissioner, Mrs. Mary-Evelyn Parker, desired to inform the personnel already employed in the St. Martin-Parish office, as well as the Welfare Board' in that Parish, of the employment of Mrs. Bienvenu, before any public announcement should be made of the fact.
“6. On what precise date the record' does not reveal, but Representative Angelle- *215 telephoned J. André Bienvenu, father-in-law of the complainant, and according to Mr. Angelle:
“ ‘I told him that I wanted to discuss '.the possibility of his daughter-in-law and her appointment. * * * ’
.and Mr. Angelle asked Mr. Bienvenu to .arrange a meeting of the three of them. Mr. Bienvenu relayed Mr. Angelle’s request to the complainant and, giving as her reason her commitment to the Welfare De■partment personnel in Baton Rouge not to •discuss the appointment with anyone, she -declined to see Mr. Angelle. In the words •of J. André Bienvenu, Mr. Angelle’s reaction to this news was expressed as follows:
“ ‘ * * * I am sorry that she feels that way because I have her appointment in my hand. * * * Mrs. Parker will not appoint nobody unless I give the O.K. * * *.’
“7. A letter written November 13, 1962 •confirming the employment of Mrs. Bien-venu, effective November 26, 1962, was prepared in the Department of Public Welfare in Baton Rouge for the signature of the Commissioner, Mrs. Parker, and this letter was on her desk for her signature when Mrs. Parker received a telephone call ■from Robert Angelle, State Representative ■from St. Martin Parish, requesting that .Mrs. Parker refrain from appointing Mrs. Bienvenu until Mr. Angelle could come to Baton Rouge and discuss the matter with Mrs. Parker. It was indicated in this con•versation by telephone that Mr. Angelle ■was in possession of information concerning Mrs. Bienvenu which was of such a ■nature that discussion of it by telephone was not deemed advisable. In deference •to this request, Mrs. Parker withheld her signature from the letter and awaited the -visit of Mr. Angelle.
“8. Some days later, on December 5, 1962, Mr. Angelle came to Baton Rouge -■and discussed the matter with Mrs. Parker. At this time he urged Mrs. Parker not to appoint Mrs. Bienvenu.[1] Instead of re-
ferring this information back to the Director of the Department of Civil Service so that he could investigate the charges made by Mr. Angelle and make a judgment on the fitness of the candidate on the eligible list, Mrs. Parker made no report to the Department of Civil Service concerning her conversations with Representative Angelle nor did she investigate on her own to determine the validity of the charges. She simply informed Mrs. Bienvenu by letter of December 7, 1962, that she would not be employed.
“9. Mrs. Bienvenu, believing that political considerations had been responsible for preventing her from entering into the employment of the Department of Public Welfare, prepared and mailed her letter of complaint to the Department of Civil Service under date of December 21, 1962.
“10. Representative Angelle’s call and visit to Mrs. Mary Evelyn Parker, Commissioner of Public Welfare, were for the specific purpose of prevailing upon Mrs. Parker not to appoint Mrs. Bienvenu to the job as Director of the St. Martin Parish office of the Department of Public Welfare, and his actions were taken because of Mrs. Bienvenu’s refusal to come to him and discuss with him the manner in which that office would be operated by Mrs. Bienvenu. These actions were political in nature. But for the intervention of Representative Angelle, Mrs. Bienvenu would have commenced her duties on November 26, 1962.”
Based upon the above findings of fact, we believe that the Commission properly recognized Mrs. Lité B. Bienvenu as having been duly appointed to the position of *216 Public Welfare Director II for St. Martin Parish and that the appointment was subsequently cancelled for political reasons and we do not believe that such an order could by any stretch of the imagination be interpreted as a direct appointment of Mrs. Bienvenu to the position by the Commission. The Commission concedes it has no authority to make a direct appointment. Based upon the evidence in this record and the order of the Commission, supra, we deduce that the Commission has (1) in substance found that Mrs. Bienvenu was in fact appointed; and (2) concluded that the action of the appointing authority deprived her of the position because of political influence and, therefore, in substance, the Commission directed the appointing authority to validate and effectuate Mrs. Bienvenu’s appointment which had, in fact, been made by Mrs. Mary Evelyn Parker, Commissioner of Welfare for the State of Louisiana.
We will consider the question of whether Mrs. Bienvenu was, in fact, appointed within the meaning of the word “appointed” as it appears in the Civil Service Rules. We note that in Chapter 1, Paragraph 1.5 of the Commission’s rules, “appointment” is defined as follows:
“ ‘Appointment’ means the designation of a person by due authority, to become an employee in a position, and his induction into employment in such position.”
Section 8.9 A of the Commission’s Rules regarding appointment provides as follows:
“8.9 Appointment of Eligibles From Certificates.
“A. Except as provided in Sub-sections -B- and -C- hereof, appointment from certificates must be made from one of the three highest ranking eligibles who have not indicated an unwillingness to accept appointment, except in making appointments from a department preferred re-employment list the highest ranking eligible shall be appointed. Certificates showing action taken thereon must be returned within fifteen -15-working days after receipt unless the time is extended by the director. In each case of acceptance of an appointment, such appointment shall become effective as of the date on which the appointee enters upon duty.” (Emphasis added.)
We believe that the two rules here-inabove set forth regarding appointment must be construed in connection with each other in determining what constitutes an appointment under the Civil Service System.
Rule 1.5, if taken alone, might conceivably be interpreted to mean that an appointment does not take place by the mere designation of a person to fill a certain position but only upon his actual induction into or commencement of performing the duties incident thereto.
However, the last sentence of Rule 8.9 A states that in each case of acceptance of an appointment such appointment shall become effective as of the date upon which the appointee enters upon duty. We are of the opinion that taken together these two rules mean that an inchoate appointment is made upon the designation of the employee to a certain office and his acceptance thereof and although he is an appointee in the sense that he has been selected, designated and has accepted the office, the appointment is not effective insofar as his pay and obligation to perform any service is concerned until such time as he actually reports for duty and assumes the function of the particular position. We think this is a reasonable and rational interpretation of the two rules construed together. To hold otherwise is to say that even after an employee has been interviewed, told that the position is his and told to report on a certain day (which, incidentally, is what happened in this case), he still has not been appointed to the position and has not acquired any rights under the Civil Service Commission.
*217 Furthermore, if the rule of the Commission is so construed, its application to the case at bar would be clearly unconstitutional as being violative of the letter and spirit of the amendment which seeks to protect not only employees in the Civil Service but also applicants from political discrimination and arbitrary action by the appointing authority under certain conditions which we believe exist in this case.
While it is quite true, and we have held on numerous occasions, that the rules of the Commission have the effect of rules of law, it is also quite clear that any rule of the Commission which violates, or any application of the rule of the Commission which might otherwise be valid but which if applied to a given situation, violates the letter or spirit of the amendment, the application of such rule under such circumstances cannot be sustained. For example, assuming the Commission’s rule to be that a designated or appointed employee is given no rights or given no protection under the amendment until he actually commences his duties, we believe that such rule applied in this case would be clearly invalid because there can be no question but that the amendment intends to protect a person in Mrs. Bienvenu’s position.
The Commission found and the record shows beyond any doubt that Mrs. Bienvenu was on the list of eligibles. She was interviewed by members of the department, engaged to fill the position, accepted the position and was told the date on which she was to commence performance of her work. Subsequently, because she refused to consult with a member of the Legislature, she was denied the right to enter into the performance of the services .for which she had been engaged. There is no question but that had not Angelle intervened, the letter of confirmation would have been signed by Mrs. Parker. In this connection, Mrs. Parker’s failure to sign the letter is of no moment. We know of no rule requiring the appointment to be made in writing. In the present case the contract of employment was complete when Mrs. Parker told Mrs. Bienvenu she was accepted and specified the date on which her services would commence. The failure to sign the letter neither added to nor detracted from the appointment.
It is clear that the amendment intends that a person who is applying for a position shall not be discriminated against. Article XIV, Sec. 15 (I) in effect provides that the Commission has power and authority to adopt and enforce the rules having the effect of law regulating personnel matters and transactions and employment conditions and carrying out generally the provisions of the amendment. Article XIV, Sec. 15 (O) (2) provides the Commission has the right to hear appeals of persons who claim that they have been discriminated against and review their applications.
Rule 14.1 (A) of the Commission provides as follows:
“No person shall be appointed or promoted to, or demoted, or dismissed from any position in the state classified service, or in any way favored or discriminated against with respect to employment in the classified service because of his political or religious opinions or affiliations.”
If we were given the privilege of creating our own set of facts, we could not possibly conceive of a case stronger in favor of an applicant than the one with which we are here concerned. To reiterate, Mrs. Bienvenu was verbally told the job was hers, she accepted, the date of commencement was fixed and so far as the parties were concerned, the matter was closed.
It is inconceivable that under these circumstances Mrs. Bienvenu acquired no rights protected by the Civil Service Act. If such an applicant has no protection, then no one has any protection from discrimination, bias or prejudice until such time as he or she actually commences performance of his or her duties. To pursue this line of reasoning to its logical conclusion, we would have to hold that had the letter of confirma *218 tion been written and signed by Mrs. Parker and had Mrs. Bienvenu accepted in writing, nevertheless, on the morning of November 26th, Mrs. Bienvenu could have been met at the door of the welfare office and told that the job was not hers and the result would have to be the same, namely, that she would be denied the employment.
In our opinion, when the contract of employment was agreed upon, the position was filled and while the appointment may not have become effective in the sense that the employee had not commenced performance of her duties, nevertheless, such employee became vested with rights under the amendment which prohibited her dismissal because political interference was brought to bear. It has been held that the purpose of the Civil Service amendment is the substitution of business principles and methods for the spoils system and the conduct of the Civil Service system especially in the matter of appointment. Ricks v. Department of State Civil Service, 200 La. 341, 8 So.2d 49. The Ricks case further held that the purpose of the law is to eradicate the system of making appointments from political considerations and in lieu thereof to establish a merit system as the basis from which appointments may be made. In Murtagh v. Department of City Civil Service, 215 La. 1007, 42 So.2d 65, it was held the act is designed to protect employees from political discrimination and that unless employees are protected the system would be rendered ineffective and useless. We held virtually the same thing in perhaps stronger language in the Coon case, La.App., 141 So.2d 112.
We concede that some might attempt to justify denial of Mrs. Bienvenu’s right to the job on the ground that the appointing authority could select any of the three eli-gibles in conformity with the rules of the Commission and because discretion in employment of any of the three rests in the appointing officer, there is no grounds for complaint because either of the other two could have been selected and while this may be true in an ordinary case, we do not think the rule could be applied in this case-.. Granting that there is and must be some-discretion in the appointing authority in. making the selection because, as a matter of common sense, there are other criteria^ than ability of the person making the highest examination grade which must be taken into consideration in hiring an employee,, this does not mean that once a selection has. been made that the appointing authority-may for no valid reason recall the designation made and appoint someone else. Sucb an act by the appointing authority is not am exercise of its discretionary power but clearly an abuse thereof which the Commission has the power to correct.
Briefly stated, we conclude: (1) Mrs. Bienvenu was appointed to the position although the appointment had not become effective in the sense that she had not commenced actual performance of her duties; (2) the designation or appointment vested her with at least the inchoate right to the position unless she could be disqualified for cause; (3) under the circumstances,, the action of the appointing authority in-, canceling the designation or appointment was clearly an abuse of the discretion vested in her since an agreement regarding her employment had been reached; (4) under the circumstances, the Commission has the-authority to recognize the appointment and; decree that the employment shall commence upon the date stated by the appointing authority; (5) the rights thus acquired by Mrs. Bienvenu not to be deprived of the-position because of political influence is-protected by the amendment.
For the above reasons the order of the.Civil Service Commission is affirmed.
Affirmed.
HERGET and REID, JJ., dissent.

“l. The testimony is in conflict as to what was said by Mr. Angelle to Mrs. Parker as the reason for his believing that Mrs. Bienvenu was not a proper person to hold the job as Director of Public Welfare in St. Martin Parish, but there is no dispute that he urged her not to make the appointment.